# EXHIBIT A

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor name **Name Your Sport, LLC**

United States Bankruptcy Court for the: DISTRICT OF NEW JERSEY

Case number (if known) **22-18730**

■ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property                        12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:    Cash and cash equivalents**

**1. Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

**3.    Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1.  **TD Bank** | **Checking** | 0380 | $2,764.98 |

**4.    Other cash equivalents** *(Identify all)*

**5.    Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| | $2,764.98 |
|---|---|

**Part 2:    Deposits and Prepayments**

**6. Does the debtor have any deposits or prepayments?**

☐ No.  Go to Part 3.
■ Yes Fill in the information below.

**7.    Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

| 7.1.  **Security deposit paid to landlord** | $9,000.00 |
|---|---|

**8.    Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
Description, including name of holder of prepayment

**9.    Total of Part 2.**
Add lines 7 through 8. Copy the total to line 81.

| | $9,000.00 |
|---|---|

| Debtor | **Name Your Sport, LLC** | Case number *(if known)* **22-18730** |
|---|---|---|
| | Name | |

---

| Part 3: | **Accounts receivable** |
|---|---|

**10. Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
■ Yes Fill in the information below.

| 11. | **Accounts receivable** | | | | |
|---|---|---|---|---|---|
| | 11a. 90 days old or less: | **23,771.68** | - | **0.00** | = .... | **$23,771.68** |
| | | face amount | | doubtful or uncollectible accounts | | |

| 12. | **Total of Part 3.** | **$23,771.68** |
|---|---|---|
| | Current value on lines 11a + 11b = line 12. Copy the total to line 82. | |

| Part 4: | **Investments** |
|---|---|

**13. Does the debtor own any investments?**

■ No. Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | **Inventory, excluding agriculture assets** |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No. Go to Part 6.
■ Yes Fill in the information below.

| | General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|---|
| 19. | **Raw materials** | | | | |
| 20. | **Work in progress** | | | | |
| 21. | **Finished goods, including goods held for resale** | | | | |
| 22. | **Other inventory or supplies** **Sports drinks and water** | | **$0.00** | **Replacement** | **$65.00** |

| 23. | **Total of Part 5.** | **$65.00** |
|---|---|---|
| | Add lines 19 through 22. Copy the total to line 84. | |

24. **Is any of the property listed in Part 5 perishable?**
■ No
☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
■ No
☐ Yes. Book value _____ Valuation method _____ Current Value _____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 6: | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

| Debtor | **Name Your Sport, LLC** | Case number *(If known)* **22-18730** |
|--------|--------------------------|----------------------------------------|
| | Name | |

■ No. Go to Part 7.
☐ Yes Fill in the information below.

<div style="background:black;color:white">Part 7:</div> **Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.
■ Yes Fill in the information below.

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---------------------|------------------------------------------------------|------------------------------------------|-------------------------------------|
| 39. | **Office furniture**<br>**Bar Furniture**<br>**835 East Clements Bridge Road Suite 9, Runnemede NJ 08078** | $0.00 | **Liquidation** | $800.00 |
| | **2 chairs, desk,** | $0.00 | **Liquidation** | $100.00 |
| | **Desktop computer, and printer (Brother)** | $0.00 | **Liquidation** | $500.00 |
| | **3 year old server for computer system** | $0.00 | | Unknown |
| 40. | **Office fixtures** | | | |
| 41. | **Office equipment, including all computer equipment and communication systems equipment and software**<br>**Hitrax simulation system**<br>**835 East Clements Bridge Road, Suite 9 Runnemede, NJ 08078** | $0.00 | **Liquidation** | $7,000.00 |
| | **IT POS System**<br>**835 East Clements Bridge Road Suite 9, Runnemede NJ 08078** | $0.00 | **Liquidation** | Unknown |

42. **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

43. **Total of Part 7.**
Add lines 39 through 42. Copy the total to line 86.

| | $8,400.00 |
|---|-----------|

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
■ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
■ No
☐ Yes

<div style="background:black;color:white">Part 8:</div> **Machinery, equipment, and vehicles**

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.

| Debtor | **Name Your Sport, LLC** | Case number *(If known)* **22-18730** |
|---|---|---|
| | Name | |

■ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|
| 47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 48. **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors,<br>floating homes, personal watercraft, and fishing vessels | | | |
| 49. **Aircraft and accessories** | | | |
| 50. **Other machinery, fixtures, and equipment (excluding farm<br>machinery and equipment)**<br>**7 Batting Cages - Custom made to fit Debtor's<br>space. Therefore, value is estimated<br>835 East Clements Bridge Road, Suite 9<br>Runnemede, NJ 08078** | $0.00 | Liquidation | $20,000.00 |
| **7 Tv & Brackets<br>835 East Clements Bridge Road, suite 9<br>Runnemede, NJ 08078** | $0.00 | Liquidation | $900.00 |
| **Sports Equipment<br>835 East Clements Bridge Road, Suite 9<br>Runnemede, NJ 08078** | $0.00 | | $800.00 |
| **Signage<br>835 East Clements Bridge Road Suite 9,<br>Runnemede NJ 08078** | $0.00 | | $0.00 |
| **3 Golf Simulators** | $0.00 | Liquidation | $3,000.00 |
| **2 multi-simulators (simulate approximately 15<br>different sports)** | Unknown | | Unknown |

| 51. | **Total of Part 8.**<br>Add lines 47 through 50.  Copy the total to line 87. | **$24,700.00** |
|---|---|---|

52. **Is a depreciation schedule available for any of the property listed in Part 8?**
   ■ No
   ☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
   ■ No
   ☐ Yes

**Part 9:    Real property**

54. **Does the debtor own or lease any real property?**

   ■ No.  Go to Part 10.
   ☐ Yes Fill in the information below.

| Debtor | **Name Your Sport, LLC** | Case number *(If known)* **22-18730** |
|---|---|---|
| | Name | |

---

| Part 10: | Intangibles and intellectual property |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No. Go to Part 11.
☐ Yes Fill in the information below.

| Part 11: | All other assets |
|---|---|

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

■ No. Go to Part 12.
☐ Yes Fill in the information below.

| Debtor | Name Your Sport, LLC | Case number *(If known)* 22-18730 |
|---|---|---|
| | Name | |

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $2,764.98 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $9,000.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $23,771.68 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $65.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $8,400.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $24,700.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* ..........................................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $68,701.66 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92 | | $68,701.66 |

# EXHIBIT B

# EXHIBIT B

# EXHIBIT B

## Liabilities

This Plan of Reorganization (the "Plan") assumes the lease between Name Your Sport, LLC ("Debtor") and GA Nanak Investors, LLC ("Landlord") for the retail space located at 835 East Clements Bridge Road, Suite 9, Runnemede, NJ 08078 (the "Demised Premises") pursuant to 11 U.S.C. § 365(b).  The Debtor will cure the pre-petition past due amount of $38,357.91 and continue to occupy the Demised Premises in accordance with the terms of the lease dated November 15, 2018.

The Debtor will pay the one (1) priority claim to the Internal Revenue Service ("IRS") in the amount of $1,028.84 prior to the Effective Date of the Plan, as that claim is for fourth (4th) quarter post-petition payroll taxes that are paid in the ordinary course.

Finally, the general unsecured claims are as follows:

| | |
|---|---|
| PSE&G | $ 7,240.96 |
| Fundation | $ 12,802.62 |
| South Jersey Gas | $ 13,151.85 |
| TD Bank Credit Card | $ 14,209.74 |
| Eisenberg, Gold & Agrawal | $ 2,130.00 |
| **Total** | **$ 49,536** |

# EXHIBIT C

# EXHIBIT C

NAME YOUR SPORT LLC
Projection
12 mos
as of 01/31/2023

| | Feb-23 | Mar-23 | Apr-23 | Mar-23 | Jun-23 | Jul-23 | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | 12 Mo Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Receipts | 42,000 | 38,000 | 35,000 | 32,000 | 28,000 | 25,000 | 23,000 | 28,000 | 32,000 | 35,000 | 35,000 | 35,000 | 388,000 |
| | | | | | | | | | | | | | |
| Expenses | | | | | | | | | | | | | |
| Rent | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 72,000 |
| Payroll | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7000 | 84,000 |
| Payroll taxes | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 9,240 |
| Payroll Service Fees | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 379 |
| Utilties | | | | | | | | | | | | | - |
| Comcast | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 7,773 |
| PSEG | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 10,318 |
| SJ Gas | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| Waste Management | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 2,640 |
| | | | | | | | | | | | | | - |
| AMTrust | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 4,976 |
| Premco Financial | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | - | - | 4,189 | 1,370 | 1,370 | 16,518 |
| Computer | | | | | | | | | | | | | |
| esoft | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 1,488 |
| Gateway | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 180 |
| Computer Expenses Misc | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 1,957 |
| Office Supplies | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 1,452 |
| Repairs | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 2,461 |
| Party Supplies & Food | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 11,828 |
| Supplies | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 3,675 |
| Repairs & Maintenance | | | | | | | | | | | | | - |
| Merchant Service Fees | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 4,238 |
| Bank Service Charges | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 948 |
| | | | | | | | | | | | | | |
| Interest Expense | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 1,957 |
| Professional Fees | | | | | | | | | | | | | |
| Accounting | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Legal | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9,600 |
| Taxes | | | | | | | 78 | | | | | - | 78 |
| Marketing | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,000 |
| Chapter 11 Plan | | | 1,000 | 1,000 | 1,000 | - | - | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 8,000 |
| | | | | | | - | | | | | | | |
| Total Expenses | 23,279 | 23,279 | 24,279 | 24,279 | 24,279 | 23,279 | 23,357 | 22,909 | 22,909 | 27,098 | 24,280 | 24,280 | 287,505 |
| | | | | | | | | | | | | | |
| Net Income | 18,721 | 14,721 | 10,721 | 7,721 | 3,721 | 1,721 | (357) | 5,091 | 9,091 | 7,902 | 10,720 | 10,720 | 100,495 |

# EXHIBIT D

# EXHIBIT D

3:15 PM

10/30/22

Cash Basis

**Name Your Sport**
# Balance Sheet
**As of October 31, 2022**

|  | Oct 31, 22 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| Operating #0380  TD Bank | 2,213.20 |
| **Total Checking/Savings** | 2,213.20 |
| **Total Current Assets** | 2,213.20 |
| **Fixed Assets** | |
| Equipment | 370,904.40 |
| Furntiture | 7,147.85 |
| Signage | 5,891.79 |
| Leasehold Improvements | 237,831.30 |
| Accumulated Depreciation | -184,958.17 |
| **Total Fixed Assets** | 436,817.17 |
| **Other Assets** | |
| Security Deposits | 11,630.00 |
| **Total Other Assets** | 11,630.00 |
| **TOTAL ASSETS** | **450,660.37** |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Credit Cards** | |
| TD Bank  VISA # 2077 | 13,972.35 |
| **Total Credit Cards** | 13,972.35 |
| **Other Current Liabilities** | |
| Loan - J Palcko | 3,500.00 |
| Loan - KC Electric | 5,000.00 |
| Loan Payable - M. Palcko | 908,233.02 |
| **Payroll Liabilities** | |
| 940 | 17.10 |
| 927 | 672.82 |
| 941 | 1,742.70 |
| **Total Payroll Liabilities** | 2,432.62 |
| **Total Other Current Liabilities** | 919,165.64 |
| **Total Current Liabilities** | 933,137.99 |
| **Long Term Liabilities** | |
| Fundation Funding Corp | 10,340.21 |
| **Total Long Term Liabilities** | 10,340.21 |
| **Total Liabilities** | 943,478.20 |
| **Equity** | |
| Members Contribtuion | 49,994.30 |
| Due To From UGW | -23,771.68 |
| Members Draw | -16,082.53 |
| Members Equity | -406,221.33 |
| Net Income | -96,736.59 |
| **Total Equity** | -492,817.83 |
| **TOTAL LIABILITIES & EQUITY** | **450,660.37** |

**11:53 AM**

**11/10/22**

<div align="center">

**Name Your Sport**

**Statement of Cash Flows**

**January 1 through October 30, 2022**

</div>

|  | Jan 1 - Oct 30, 22 |
|---|---:|
| **OPERATING ACTIVITIES** | |
| **Net Income** | -90,162.67 |
| **Adjustments to reconcile Net Income** | |
| **to net cash provided by operations:** | |
| **TD Bank  VISA # 2077** | 239.79 |
| **Loan - J Palcko** | 3,500.00 |
| **Loan - KC Electric** | 5,000.00 |
| **Payroll Liabilities:940** | -24.07 |
| **Payroll Liabilities:927** | 914.75 |
| **Payroll Liabilities:941** | -1,283.04 |
| **Net cash provided by Operating Activities** | -81,815.24 |
| **INVESTING ACTIVITIES** | |
| **Equipment** | 14,000.00 |
| **Accumulated Depreciation** | 48,249.25 |
| **Net cash provided by Investing Activities** | 62,249.25 |
| **FINANCING ACTIVITIES** | |
| **Fundation Funding Corp** | 10,340.21 |
| **Members Contribtuion** | 49,994.30 |
| **Due To From UGW** | -10,989.92 |
| **Members Draw** | -16,082.53 |
| **Net cash provided by Financing Activities** | 33,262.06 |
| **Net cash increase for period** | 13,696.07 |
| **Cash at beginning of period** | -8,807.25 |
| **Cash at end of period** | **4,888.82** |

**3:14 PM**

**10/30/22**

**Cash Basis**

# Name Your Sport
## Profit & Loss
### January through October 2022

|  | Jan - Oct 22 |
|---|---:|
| **Ordinary Income/Expense** |  |
| **Income** |  |
| Summer Camp | 3,656.00 |
| Sales | 170,517.66 |
| **Total Income** | 174,173.66 |
| **Cost of Goods Sold** |  |
| Party Supplies- COGS | 1,888.43 |
| Food - COGS | 8,526.70 |
| **Total COGS** | 10,415.13 |
| **Gross Profit** | 163,758.53 |
| **Expense** |  |
| Dues & Subcriptions | 152.34 |
| Travel | 203.00 |
| Auto Expenses | 286.84 |
| Bank Service Charges | 923.42 |
| Computer Expenses | 3,344.96 |
| Insurance | 13,594.98 |
| Interest Expense | 1,525.76 |
| Marketing & Promotion | 1,638.54 |
| Meals | 978.10 |
| Merchant Service Fees | 3,604.64 |
| Office Supplies | 1,401.87 |
| Payroll Expenses | 115,151.78 |
| Payroll Taxes | 13,108.88 |
| Payroll Service Fees | 318.50 |
| Professional Services | 2,519.01 |
| Rent Expense | 24,000.00 |
| Repairs & Maintenance | 2,461.21 |
| Supplies | 2,457.18 |
| Utilities | 17,724.94 |
| **Total Expense** | 205,395.95 |
| **Net Ordinary Income** | -41,637.42 |
| **Other Income/Expense** |  |
| **Other Income** |  |
| Other Income | 11,500.00 |
| **Total Other Income** | 11,500.00 |
| **Other Expense** |  |
| Depreciation Expense | 66,599.17 |
| **Total Other Expense** | 66,599.17 |
| **Net Other Income** | -55,099.17 |
| **Net Income** | **-96,736.59** |

3:14 PM

10/30/22

Cash Basis

## Name Your Sport
## Profit & Loss
### January through October 2022

| | Jan 22 | Feb 22 | Mar 22 | Apr 22 | May 22 | Jun 22 | Jul 22 | Aug 22 | Sep 22 | Oct 22 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | |
| **Income** | | | | | | | | | | | |
| Summer Camp | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 872.00 | 2,384.00 | 400.00 | 0.00 | 3,656.00 |
| Sales | 23,258.20 | 38,619.80 | 22,321.60 | 11,486.40 | 26,959.46 | 12,736.20 | 7,570.00 | 5,622.00 | 7,806.00 | 14,138.00 | 170,517.66 |
| **Total Income** | 23,258.20 | 38,619.80 | 22,321.60 | 11,486.40 | 26,959.46 | 12,736.20 | 8,442.00 | 8,006.00 | 8,206.00 | 14,138.00 | 174,173.66 |
| **Cost of Goods Sold** | | | | | | | | | | | |
| Party Supplies- COGS | 136.73 | 974.57 | 211.38 | 53.66 | 470.49 | 41.60 | 0.00 | 0.00 | 0.00 | 0.00 | 1,888.43 |
| Food - COGS | 1,180.65 | 886.40 | 2,425.13 | 980.69 | 587.03 | 547.31 | 162.32 | 637.12 | 536.55 | 583.50 | 8,526.70 |
| **Total COGS** | 1,317.38 | 1,860.97 | 2,636.51 | 1,034.35 | 1,057.52 | 588.91 | 162.32 | 637.12 | 536.55 | 583.50 | 10,415.13 |
| **Gross Profit** | 21,940.82 | 36,758.83 | 19,685.09 | 10,452.05 | 25,901.94 | 12,147.29 | 8,279.68 | 7,368.88 | 7,669.45 | 13,554.50 | 163,758.53 |
| **Expense** | | | | | | | | | | | |
| Dues & Subcriptions | 12.75 | 12.75 | 22.74 | 12.75 | 9.99 | 22.74 | 22.74 | 11.96 | 11.96 | 11.96 | 152.34 |
| Travel | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 185.00 | 0.00 | 0.00 | 18.00 | 0.00 | 203.00 |
| Auto Expenses | 63.65 | 40.52 | 0.00 | 47.92 | 0.00 | 0.00 | 0.00 | 0.00 | 68.00 | 66.75 | 286.84 |
| Bank Service Charges | 410.00 | 35.20 | 10.00 | 10.00 | 31.84 | 11.38 | 150.00 | 10.00 | 255.00 | 0.00 | 923.42 |
| Computer Expenses | 137.55 | 15.90 | 335.03 | 2,023.28 | 150.40 | 137.05 | 12.55 | 260.70 | 136.20 | 136.30 | 3,344.96 |
| Insurance | 2,720.08 | 2,343.91 | 2,456.41 | 2,500.81 | 2,407.45 | 217.91 | 217.91 | 701.00 | 29.50 | 0.00 | 13,594.98 |
| Interest Expense | 193.89 | 192.87 | 172.35 | 192.87 | 0.00 | 146.35 | 146.35 | 0.00 | 241.09 | 239.99 | 1,525.76 |
| Marketing & Promotion | 1,168.91 | 1,503.37 | 1,068.91 | 1,077.25 | 1,345.77 | 1,286.74 | 559.14 | 742.38 | 615.10 | -7,729.03 | 1,638.54 |
| Meals | 350.43 | 131.69 | 251.08 | 12.64 | 0.00 | 0.00 | 0.00 | 145.47 | 86.79 | 0.00 | 978.10 |
| Merchant Service Fees | 341.70 | 496.63 | 551.90 | 655.87 | 338.30 | 371.19 | 255.30 | 213.76 | 170.42 | 209.57 | 3,604.64 |
| Office Supplies | 0.00 | 176.18 | 227.65 | 0.00 | 128.88 | 46.54 | 0.00 | 550.65 | 229.60 | 42.37 | 1,401.87 |
| Payroll Expenses | 10,511.50 | 12,323.01 | 12,893.52 | 11,327.82 | 10,679.02 | 17,618.83 | 12,629.42 | 11,397.36 | 7,087.20 | 8,684.10 | 115,151.78 |
| Payroll Taxes | 940.23 | 1,423.32 | 1,072.24 | 1,260.75 | 1,184.52 | 1,937.22 | 979.84 | 1,239.81 | 1,977.98 | 1,092.97 | 13,108.88 |
| Payroll Service Fees | 33.25 | 31.50 | 33.25 | 28.00 | 28.00 | 45.50 | 29.75 | 33.25 | 28.00 | 28.00 | 318.50 |
| Professional Services | 450.00 | 270.00 | 694.26 | 0.00 | 798.75 | 0.00 | 0.00 | 0.00 | 306.00 | 0.00 | 2,519.01 |
| Rent Expense | 6,000.00 | 6,000.00 | 6,000.00 | 0.00 | 6,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24,000.00 |
| Repairs & Maintenance | 518.89 | 1,124.45 | 262.60 | 105.95 | 95.93 | 84.80 | 0.00 | 259.00 | 0.00 | 9.59 | 2,461.21 |
| Supplies | 797.16 | 0.00 | 535.82 | 11.72 | 490.48 | 322.00 | 300.00 | 0.00 | 0.00 | 0.00 | 2,457.18 |
| Utilities | 606.08 | 607.99 | 2,920.86 | 611.28 | 612.97 | 685.31 | 684.36 | 686.45 | 686.46 | 9,623.18 | 17,724.94 |
| **Total Expense** | 25,256.07 | 26,729.29 | 29,508.62 | 19,878.91 | 24,302.30 | 23,118.56 | 15,987.36 | 16,251.79 | 11,947.30 | 12,415.75 | 205,395.95 |
| **Net Ordinary Income** | -3,315.25 | 10,029.54 | -9,823.53 | -9,426.86 | 1,599.64 | -10,971.27 | -7,707.68 | -8,882.91 | -4,277.85 | 1,138.75 | -41,637.42 |
| **Other Income/Expense** | | | | | | | | | | | |
| **Other Income** | | | | | | | | | | | |
| Other Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,500.00 | 0.00 | 11,500.00 |

For Internal Management Purposes Only

**3:14 PM**

**10/30/22**

**Cash Basis**

**Name Your Sport**

**Profit & Loss**

January through October 2022

|  | Jan 22 | Feb 22 | Mar 22 | Apr 22 | May 22 | Jun 22 | Jul 22 | Aug 22 | Sep 22 | Oct 22 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Other Income** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,500.00 | 0.00 | 11,500.00 |
| **Other Expense** | | | | | | | | | | | |
| Depreciation Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60,149.25 | 6,449.92 | 66,599.17 |
| **Total Other Expense** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60,149.25 | 6,449.92 | 66,599.17 |
| **Net Other Income** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -48,649.25 | -6,449.92 | -55,099.17 |
| **Net Income** | -3,315.25 | 10,029.54 | -9,823.53 | -9,426.86 | 1,599.64 | -10,971.27 | -7,707.68 | -8,882.91 | -52,927.10 | -5,311.17 | -96,736.59 |

# EXHIBIT E

# EXHIBIT E

**Fill in this information to identify the case:**

Debtor Name  Name Your Sport LLC

United States Bankruptcy Court for the _____ District of _____

Case number  22-18730-ABA

☐ Check if this is an amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11                     12/17

Month  December 2022

Date report filed  1/20/2023
MM / DD / YYYY

Line of business:  Sport Training

NAISC code  _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:  Michael Palcko

Original signature of responsible party  *Michael Palcko*

Printed name of responsible party  Michael Palcko

### ■ 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated

|  | If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*. | Yes | No | N/A |
|---|---|---|---|---|
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☐ | ☑ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
|  | If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*. | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☑ | ☐ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☑ | ☐ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Name Your Sport LLC                           Case number 22-18730-ABA

17. Have you paid any bills you owed before you filed bankruptcy?   ❏ ☑ ❏

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?   ❏ ☑ ❏

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**   $ 8635.02

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.   $ 40,127.92

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.   – $ 36,986.81

Report the total from *Exhibit D* here.

22. **Net cash flow**   + $ 3141.11

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.   = $ 11776.13

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**   $ 10,454.21

*(Exhibit E)*

Debtor Name Name Your Sport LLC                                    Case number 22-18730-ABA

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                 $ _____0

    *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                    _____9

27. What is the number of employees as of the date of this monthly report?        _____11

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?          $ _____0

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $ _____0

30. How much have you paid this month in other professional fees?                                          $ _____0

31. How much have you paid in total other professional fees since filing the case?                      $ ____1710.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected**<br>Copy lines 35-37 from the previous month's report. | − | **Actual**<br>Copy lines 20-22 of this report. | = | **Difference**<br>Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 29000.00 | − | $ 40127.92 | = | $ -11127.92 |
| 33. **Cash disbursements** | $ 26553.00 | − | $ 36986.81 | = | $ -10433.81 |
| 34. **Net cash flow** | $ 2447.00 | − | $ 3141.11 | = | $ -694.11 |

35. Total projected cash receipts for the next month:                                 $ 39000.00

36. Total projected cash disbursements for the next month:                          - $ 24259.00

37. Total projected net cash flow for the next month:                                = $ 14741.00

Official Form 425C          **Monthly Operating Report for Small Business Under Chapter 11**          page **3**

Debtor Name Name Your Sport LLC    Case number 22-18730-ABA

   **8. Additional Information**

If available, check the box to the left and attach copies of the following documents.

☑   38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑   39.  Bank reconciliation reports for each account.

☑   40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☑   41.  Budget, projection, or forecast reports.

☐   42.  Project, job costing, or work-in-progress reports.

Name Your Sport LLC

Exhibit A

December 2022

Question 5 – – In beginning of December 2022, Merchant Service Processor was still depositing credit card receipts to the Operating account # 0380. Change over to DIP account # 0829 was finalized on 12/15/2022.

Name Your Sport LLC

Exhibit B

December 2022

Questions 10 – TD Bank Operating account # 0380 was closed after the Merchant Service Processor transferred deposits to TD Bank DIP account # 0829 on 12/15/2022.

Question 15 – HIBU Global down payment of $1,520.00 for Marketing  was paid by affiliated company Underground Wrestling Club LLC credit card. Michael Palcko paid  a $20,000 retainer to Boyle & Valenti Law, PC  for the Bankruptcy.

**Name Your Sport**
**Deposit Detail**
**December 2022**

Name Your Sport LLC

Cash Receipts

December 2022

Exhibit 'C'

| Type | Date | Name | Account | Amount |
|------|------|------|---------|--------|
| Deposit | 12/01/2022 | Merchant Bank | Operating #0380 TD Bank | 205.00 |
| Deposit | 12/03/2022 | Merchant Bank | Operating #0380 TD Bank | 5.00 |
| Deposit | 12/05/2022 | Merchant Bank | Operating #0380 TD Bank | 950.00 |
| Deposit | 12/05/2022 | Merchant Bank | Operating #0380 TD Bank | 634.00 |
| Deposit | 12/05/2022 | Merchant Bank | Operating #0380 TD Bank | 583.00 |
| Deposit | 12/05/2022 | Merchant Bank | Operating #0380 TD Bank | 0.27 |
| Deposit | 12/06/2022 | Merchant Bank | Operating #0380 TD Bank | 140.00 |
| Deposit | 12/07/2022 | Merchant Bank | Operating #0380 TD Bank | 1,925.00 |
| Deposit | 12/08/2022 | Merchant Bank | Operating #0380 TD Bank | 776.00 |
| Deposit | 12/09/2022 | Merchant Bank | Operating #0380 TD Bank | 154.00 |
| Deposit | 12/12/2022 | Merchant Bank | Operating #0380 TD Bank | 1,107.00 |
| Deposit | 12/12/2022 | Merchant Bank | Operating #0380 TD Bank | 739.00 |
| Deposit | 12/12/2022 | Amazon | Operating #0380 TD Bank | 26.65 |
| Deposit | 12/12/2022 | Merchant Bank | Operating #0380 TD Bank | 154.00 |
| Deposit | 12/13/2022 | Merchant Bank | Operating #0380 TD Bank | 173.00 |
| Deposit | 12/14/2022 | Merchant Bank | Operating #0380 TD Bank | 957.00 |
| Deposit | 12/15/2022 | Merchant Bank | Operating #0380 TD Bank | 495.00 |
| **Total Operating #0380 TD Bank** | | | | **9,023.92** |
| | | | | |
| Deposit | 12/16/2022 | Merchant Bank | TD Chap 11 # 0829 | 50.00 |
| Deposit | 12/19/2022 | Merchant Bank | TD Chap 11 # 0829 | 569.00 |
| Deposit | 12/19/2022 | Merchant Bank | TD Chap 11 # 0829 | 362.00 |
| Deposit | 12/19/2022 | Merchant Bank | TD Chap 11 # 0829 | 155.00 |
| Deposit | 12/20/2022 | Merchant Bank | TD Chap 11 # 0829 | 403.00 |
| Deposit | 12/21/2022 | Merchant Bank | TD Chap 11 # 0829 | 190.00 |
| Deposit | 12/22/2022 | Merchant Bank | TD Chap 11 # 0829 | 170.00 |
| Deposit | 12/23/2022 | Merchant Bank | TD Chap 11 # 0829 | 186.00 |
| Deposit | 12/27/2022 | Merchant Bank | TD Chap 11 # 0829 | 761.00 |
| Deposit | 12/27/2022 | Merchant Bank | TD Chap 11 # 0829 | 610.00 |
| Deposit | 12/27/2022 | Merchant Bank | TD Chap 11 # 0829 | 447.00 |
| Deposit | 12/28/2022 | Merchant Bank | TD Chap 11 # 0829 | 546.00 |
| Deposit | 12/29/2022 | Merchant Bank | TD Chap 11 # 0829 | 623.00 |
| Deposit | 12/30/2022 | Merchant Bank | TD Chap 11 # 0829 | 839.00 |
| Deposit | 12/30/2022 | | TD Chap 11 # 0829 | 3,673.00 |
| **Total TD Chap 11 # 0829** | | | | **9,584.00** |

| | | | | |
|------|------|------|---------|--------|
| **Total Receipts Both Bank Accounts December 2022** | | | | 18,607.92 |
| | | | | |
| **Underground Wrestling** | | | | 1,520.00 |
| Michael Palcko | | | | 20,000.00 |
| | | | | |
| **Total Receipts for December 2022** | | | | **$ 40,127.92** |

## Name Your Sport
**As of December 31, 2022**

Name Your Sport LLC
Cash Disbursements
"December 2022
Exhibit 'D"

| Type | Date | Num | Name | Memo | Split | Amount |
|------|------|-----|------|------|-------|--------|
| **Operating #0380  TD Bank** | | | | | | |
| Check | 12/01/2022 | eft | My Way Deli & Grill | | Members Draw | -46.15 |
| Check | 12/01/2022 | | Popeyes | | Members Draw | -11.29 |
| Check | 12/01/2022 | | ChickFilA | | Members Draw | -13.12 |
| Check | 12/02/2022 | eft | Capital One | | Members Draw | -285.00 |
| Check | 12/02/2022 | eft | Gateway Billing | | Computer Expenses | -13.55 |
| Check | 12/05/2022 | eft | Comcast | | Internet - Phone Service | -685.80 |
| Check | 12/05/2022 | eft | Merchant Bank | | Merchant Service Fees | -322.21 |
| Check | 12/06/2022 | eft | Capital One | | Members Draw | -255.00 |
| Check | 12/06/2022 | eft | Capital One | | Members Draw | -422.00 |
| Check | 12/09/2022 | eft | Waste Management | 22-47925-53006 | Trash Removal | -220.28 |
| **Total Operating #0380  TD Bank** | | | | | | **-2,274.40** |
| | | | | | | |
| **TD Chap 11 # 0829** | | | | | | |
| Check | 12/01/2022 | eft | intuit | | -SPLIT- | -3,776.83 |
| Check | 12/05/2022 | eft | The Home Depot | | Repairs & Maintenance | -112.97 |
| Check | 12/05/2022 | eft | AmTrust | Nov  WC estimate pay | Workers Comp | -498.05 |
| Check | 12/15/2022 | eft | IRS | Nov 2022 EFTPS taxe | 941 | -1,590.64 |
| Check | 12/15/2022 | eft | intuit | record 12/16 payroll | -SPLIT- | -3,872.71 |
| Check | 12/12/2022 | eft | Carosellos Pizza | | Food - COGS | -54.06 |
| Check | 12/12/2022 | eft | Carosellos Pizza | | Food - COGS | -41.70 |
| Check | 12/29/2022 | | intuit | 12/30 PR | -SPLIT- | -2,878.76 |
| Check | 12/29/2022 | | intuit | sports outlet -  basebal | Supplies | -282.00 |
| Check | 12/29/2022 | eft | BJ's Wholesale | | Office Supplies | -84.69 |
| **Total TD Chap 11 # 0829** | | | | | | **-13,192.41** |
| **Total Disbursements both Bank Accounts  - December 2022** | | | | | | **(15,466.81)** |
| | | | Boyle & Valenti Law LP | retainer | | (20,000.00) |
| | | | HIBU Global | marketing | | (1,520.00) |
| **Total All Disbursements for December 2022** | | | | | | **$ (36,986.81)** |

NAME YOUR SPORT LLC
Accounts Payable
December 2022
Exhibit "E"

| | Purpose | Bill Dated or incurred | Due Date | $ Amount |
|---|---|---|---|---|
| Accounting Bridges LLC | Accounting services | November | 10/27/4670 | 393.75 |
| AMTrust | WC Insurance | December | 1/10/2023 | 711.26 |
| Comcast | internet and phone service | December | 1/11/2023 | 685.80 |
| Esoft Planner | scheduling software | monthly | 1/30/2023 | 124.00 |
| Gateway | waiver software | monthly | 1/3/2023 | 15.00 |
| IRS | 941 payroll taxes | December | 1/17/2023 | 2,138.50 |
| IRS | 940 payroll Taxes | 4Q 2022 | 1/31/2023 | 60.72 |
| Premco Financial | BOP | Installment Plan | | 1,394.86 |
| PSEG | utilities | December | | 1,857.64 |
| South Jersey Gas | utilities | December | | 932.39 |
| State of NJ | SIT/SUI payroll taxes | 4Q 2022 | 1/31/2023 | 1,892.25 |
| Waste Management | trash removal | December | | 220.28 |
| Sirius | subscription | Nov & Dec | | 27.76 |

$  10,454.21

NAME YOUR SPORT LLC
Accounts Receivable
"December 2022
Exhibit "F"

There are no Accounts Receivable as of 12/31/2022

NAME YOUR SPORT LLC
Projection
12 mos
as of 01/19/2023

| | Jan-23 | Feb-23 | Mar-23 | Apr-23 | Mar-23 | Jun-23 | Jul-23 | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | 12 Mo Tota |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 39,000 | 42,000 | 38,000 | 35,000 | 32,000 | 28,000 | 25,000 | 23,000 | 28,000 | 32,000 | 35,000 | 35,000 | 392,000 |
| Gross Receipts | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Expenses | | | | | | | | | | | | | |
| Rent | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 72,000 |
| Payroll | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Payroll taxes | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 770 | 9,240 |
| Payroll Service Fees | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 379 |
| Utilties | | | | | | | | | | | | | - |
| Comcast | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 648 | 7,773 |
| PSEG | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 10,318 |
| SJ Gas | | | | | | | | | | | | | - |
| Waste Management | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| | | | | | | | | | | | | | - |
| AMTrust | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 4,975 |
| Premco Financial | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | 1,370 | - | - | 4,189 | 1,370 | 16,518 |
| Computer | | | | | | | | | | | | | - |
| esoft | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 124 | 1,488 |
| Gateway | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 180 |
| Computer Expenses Misc | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 1,957 |
| Office Supplies | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 121 | 1,452 |
| Repairs | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 205 | 2,461 |
| Party Supplies & Food | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 986 | 11,827 |
| Supplies | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 306 | 3,675 |
| Repairs & Maintenance | | | | | | | | | | | | | - |
| Merchant Service Fees | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 353 | 4,238 |
| Bank Service Charges | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 948 |
| | | | | | | | | | | | | | |
| Interest Expense | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 163 | 1,957 |
| Professional Fees | | | | | | | | | | | | | - |
| Accounting | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Legal | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| Taxes | | | | | | | | 78 | | | | | 78 |
| Marketing | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,000 |
| | | | | | | | | | | | | | |
| Total Expenses | 24,259 | 24,259 | 24,259 | 24,259 | 24,259 | 24,259 | 24,259 | 24,337 | 22,889 | 22,889 | 27,078 | 24,260 | 291,264 |
| | | | | | | | | | | | | | |
| Net Income | 14,741 | 17,741 | 13,741 | 10,741 | 7,741 | 3,741 | 741 | (1,337) | 5,111 | 9,111 | 7,922 | 10,740 | 100,736 |

2:44 PM

01/10/23

Accrual Basis

# Name Your Sport
## Balance Sheet
### As of December 31, 2022

|  | Dec 31, 22 |
|---|---|
| **ASSETS** |  |
| **Current Assets** |  |
| **Checking/Savings** |  |
| TD Chap 11 # 0829 | 11,776.13 |
| **Total Checking/Savings** | 11,776.13 |
| **Total Current Assets** | 11,776.13 |
| **Fixed Assets** |  |
| Equipment | 370,904.40 |
| Furntiture | 7,147.85 |
| Signage | 5,891.79 |
| Leasehold Improvements | 237,831.30 |
| Accumulated Depreciation | -184,958.17 |
| **Total Fixed Assets** | 436,817.17 |
| **Other Assets** |  |
| Security Deposits | 11,630.00 |
| **Total Other Assets** | 11,630.00 |
| **TOTAL ASSETS** | **460,223.30** |
| **LIABILITIES & EQUITY** |  |
| **Liabilities** |  |
| **Current Liabilities** |  |
| **Credit Cards** |  |
| TD Bank  VISA # 2077 | 14,073.60 |
| **Total Credit Cards** | 14,073.60 |
| **Other Current Liabilities** |  |
| Loan - J Palcko | 3,500.00 |
| Loan Payable - M. Palcko | 908,233.02 |
| **Payroll Liabilities** |  |
| 940 | 56.02 |
| 927 | 1,762.80 |
| 941 | 2,138.50 |
| **Total Payroll Liabilities** | 3,957.32 |
| **Total Other Current Liabilities** | 915,690.34 |
| **Total Current Liabilities** | 929,763.94 |
| **Long Term Liabilities** |  |
| Fundation Funding Corp | 9,831.80 |
| **Total Long Term Liabilities** | 9,831.80 |
| **Total Liabilities** | 939,595.74 |
| **Equity** |  |
| Members Contribtuion | 77,704.30 |
| Due To From UGW | -18,062.54 |
| Members Draw | -20,613.56 |
| Members Equity | -406,221.33 |
| Net Income | -112,179.31 |
| **Total Equity** | -479,372.44 |
| **TOTAL LIABILITIES & EQUITY** | **460,223.30** |

2:44 PM

01/10/23

**Accrual Basis**

# Name Your Sport
## Profit & Loss
### December 2022

|  | Dec 22 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| **Sales** | 18,581.27 |
| **Total Income** | 18,581.27 |
| **Cost of Goods Sold** | |
| Food - COGS | 95.76 |
| **Total COGS** | 95.76 |
| **Gross Profit** | 18,485.51 |
| **Expense** | |
| **Computer Expenses** | 13.55 |
| **Insurance** | |
| **Workers Comp** | 498.05 |
| **Total Insurance** | 498.05 |
| **Interest Expense** | |
| **Finance Charges** | 243.95 |
| **Total Interest Expense** | 243.95 |
| **Marketing & Promotion** | 1,520.00 |
| **Merchant Service Fees** | 322.21 |
| **Office Supplies** | 84.69 |
| **Payroll Expenses** | 12,009.60 |
| **Payroll Taxes** | |
| 940 | 17.96 |
| 927 | 229.16 |
| 941 | 918.75 |
| **Total Payroll Taxes** | 1,165.87 |
| **Payroll Service Fees** | 49.00 |
| **Repairs & Maintenance** | 112.97 |
| **Supplies** | 282.00 |
| **Utilities** | |
| **Internet - Phone Service** | 685.80 |
| **Trash Removal** | 220.28 |
| **Total Utilities** | 906.08 |
| **Total Expense** | 17,207.97 |
| **Net Ordinary Income** | 1,277.54 |
| **Net Income** | 1,277.54 |



**TD Bank**

America's Most Convenient Bank®

T    STATEMENT OF ACCOUNT

NAME YOUR SPORT LLC
DIP CASE # 22-18730 NJ
300 E FRONT ST
GLENDORA NJ 08029

Page:                                       1 of 4
Statement Period:    Dec 01 2022-Dec 31 2022
Cust Ref #:                    0829-039-T-###
Primary Account #:                          0829

## Chapter 11 Checking

NAME YOUR SPORT LLC
DIP CASE # 22-18730 NJ

Account # ▮▮▮▮0829

### ACCOUNT SUMMARY

| | | | |
|---|---|---|---|
| Beginning Balance | 2,518.61 | Average Collected Balance | 7,255.74 |
| Deposits | 6,245.00 | Interest Earned This Period | 0.00 |
| Electronic Deposits | 30,411.00 | Interest Paid Year-to-Date | 0.00 |
| | | Annual Percentage Yield Earned | 0.00% |
| Checks Paid | 12,600.00 | Days in Period | 31 |
| Electronic Payments | 14,798.48 | | |
| Ending Balance | 11,776.13 | | |

| | Total for this cycle | Total Year to Date |
|---|---|---|
| Grace Period OD/NSF Refund | $0.00 | $0.00 |

### DAILY ACCOUNT ACTIVITY

**Deposits**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/27 | DEPOSIT | 2,572.00 |
| 12/30 | DEPOSIT | 3,673.00 |
| | Subtotal: | 6,245.00 |

**Electronic Deposits**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/01 | eTransfer Credit, Online Xfer Transfer from CK▮▮▮0380 | 19,500.00 |
| 12/13 | eTransfer Credit, Online Xfer Transfer from CK▮▮▮0380 | 5,000.00 |
| 12/16 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 50.00 |
| 12/19 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 569.00 |
| 12/19 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 362.00 |
| 12/19 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 155.00 |
| 12/20 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 403.00 |
| 12/21 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 190.00 |
| 12/22 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 170.00 |
| 12/23 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 186.00 |
| 12/27 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 761.00 |
| 12/27 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 610.00 |
| 12/27 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 447.00 |

# How to Balance your Account

**Begin by adjusting your account register as follows:**

- Subtract any services charges shown on this statement.

- Subtract any automatic payments, transfers or other electronic withdrawals not previously recorded.

- Add any interest earned if you have an interest-bearing account.

- Add any automatic deposit or overdraft line of credit.

- Review all withdrawals shown on this statement and check them off in your account register.

- Follow instructions 2-5 to verify your ending account balance.

1. Your ending balance shown on this statement is:

2. List below the amount of deposits or credit transfers which do not appear on this statement. Total the deposits and enter on Line 2.

3. Subtotal by adding lines 1 and 2.

4. List below the total amount of withdrawals that do not appear on this statement. Total the withdrawals and enter on Line 4.

5. Subtract Line 4 from 3. This adjusted balance should equal your account balance.

**❶** Ending Balance        11,776.13

**❷** Total Deposits     +

**❸** Sub Total

**❹** Total Withdrawals   -

**❺** Adjusted Balance

**❷**

| DEPOSITS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Deposits** | | **❷** |

**❹**

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Withdrawals** | | **❹** |

**FOR CONSUMER ACCOUNTS ONLY — IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

If you need information about an electronic fund transfer or if you believe there is an error on your bank statement or receipt relating to an electronic fund transfer, telephone the bank immediately at the phone number listed on the front of your statement or write to:

**TD Bank, N.A., Deposit Operations Dept, P.O. Box 1377, Lewiston, Maine 04243-1377**

We must hear from you no later than sixty (60) calendar days after we sent you the first statement upon which the error or problem first appeared.  When contacting the Bank, please explain as clearly as you can why you believe there is an error or why more information is needed.  Please include:

- Your name and account number.
- A description of the error or transaction you are unsure about.
- The dollar amount of the suspected error.

When making a verbal inquiry, the Bank may ask that you send us your complaint in writing within ten (10) business days after the first telephone call.

We will investigate your complaint and will correct any error promptly.  If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error, so that you have the use of the money during the time it takes to complete our investigation.

**INTEREST NOTICE**

Total interest credited by the Bank to you this year will be reported by the Bank to the Internal Revenue Service and State tax authorities. The amount to be reported will be reported separately to you by the Bank.

**FOR CONSUMER LOAN ACCOUNTS ONLY — BILLING RIGHTS SUMMARY**

In case of Errors or Questions About Your Bill:

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at P.O. Box 1377, Lewiston, Maine 04243-1377 as soon as possible.  We must hear from you no later than sixty (60) days after we sent you the FIRST bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

FINANCE CHARGES: Although the Bank uses the Daily Balance method to calculate the finance charge on your Moneyline/Overdraft Protection account (the term "ODP" or "OD" refers to Overdraft Protection), the Bank discloses the Average Daily Balance on the periodic statement as an easier method for you to calculate the finance charge. The finance charge begins to accrue on the date advances and other debits are posted to your account and will continue until the balance has been paid in full. To compute the finance charge, multiply the Average Daily Balance times the Days in Period times the Daily Periodic Rate (as listed in the Account Summary section on the front of the statement). The Average Daily Balance is calculated by adding the balance for each day of the billing cycle, then dividing the total balance by the number of Days in the Billing Cycle. The daily balance is the balance for the day after advances have been added and payments or credits have been subtracted plus or minus any other adjustments that might have occurred that day. There is no grace period during which no finance charge accrues. Finance charge adjustments are included in your total finance charge.

**TD Bank**

America's Most Convenient Bank®

STATEMENT OF ACCOUNT

NAME YOUR SPORT LLC
DIP CASE # 22-18730 NJ

| | |
|---|---|
| Page: | 3 of 4 |
| Statement Period: | Dec 01 2022-Dec 31 2022 |
| Cust Ref #: | 0829-039-T-### |
| Primary Account #: | 0829 |

---

## DAILY ACCOUNT ACTIVITY

### Electronic Deposits (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/28 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 546.00 |
| 12/29 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 623.00 |
| 12/30 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT ****13465888 | 839.00 |
| | Subtotal: | 30,411.00 |

### Checks Paid    No. Checks: 2

*Indicates break in serial sequence or check processed electronically and listed under Electronic Payments

| DATE | SERIAL NO. | AMOUNT |
|---|---|---|
| 12/06 | 101 | 6,600.00 |
| 12/06 | 102 | 6,000.00 |
| | Subtotal: | 12,600.00 |

### Electronic Payments

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/01 | CCD DEBIT, INTUIT PAYROLL S QUICKBOOKS ****66126 | 3,776.83 |
| 12/02 | CCD DEBIT, AMTRUST NA PAYMENT 35243881 | 675.00 |
| 12/02 | CCD DEBIT, AMTRUST NA PAYMENT 35243883 | 511.35 |
| 12/02 | CCD DEBIT, AMTRUST NA PAYMENT 35243882 | 419.72 |
| 12/05 | DEBIT POS, *****04032287447, AUT 120422 DDA PURCHASE THE HOME DEPOT 0929    DEPTFORD    * NJ | 112.97 |
| 12/07 | CCD DEBIT, AMTRUST NA PAYMENT 35291029 | 498.05 |
| 12/12 | DEBIT CARD PURCHASE, *****04032287447, AUT 121122 VISA DDA PUR CAROSELLOS PIZZA    RUNNEMEDE   * NJ | 54.06 |
| 12/12 | DEBIT CARD PURCHASE, *****04032287447, AUT 121122 VISA DDA PUR CAROSELLOS PIZZA    RUNNEMEDE   * NJ | 41.70 |
| 12/15 | CCD DEBIT, INTUIT PAYROLL S QUICKBOOKS ****66126 | 3,872.71 |
| 12/15 | CCD DEBIT, IRS USATAXPYMT ****74965834368 | 1,590.64 |
| 12/29 | CCD DEBIT, INTUIT PAYROLL S QUICKBOOKS ****66126 | 2,878.76 |
| 12/29 | DEBIT POS, *****04032287447, AUT 122922 DDA PURCHASE INTUIT PAYME IN SPORT    GLENDORA    * NJ | 282.00 |
| 12/29 | DEBIT POS, *****04032287447, AUT 122922 DDA PURCHASE BJS WHOLESALE 0 1910 DE  DEPTFORD    * NJ | 84.69 |
| | Subtotal: | 14,798.48 |

---

## DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 11/30 | 2,518.61 | 12/19 | 4,001.58 |
| 12/01 | 18,241.78 | 12/20 | 4,404.58 |
| 12/02 | 16,635.71 | 12/21 | 4,594.58 |
| 12/05 | 16,522.74 | 12/22 | 4,764.58 |
| 12/06 | 3,922.74 | 12/23 | 4,950.58 |

Call **1-800-937-2000** for 24-hour Bank-by-Phone services or connect to www.tdbank.com

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender



**Bank**

America's Most Convenient Bank®

STATEMENT OF ACCOUNT

NAME YOUR SPORT LLC
DIP CASE # 22-18730 NJ

| Page: | 4 of 4 |
|---|---|
| Statement Period: | Dec 01 2022-Dec 31 2022 |
| Cust Ref #: | ▮0829-039-T-### |
| Primary Account #: | ▮0829 |

## DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 12/07 | 3,424.69 | 12/27 | 9,340.58 |
| 12/12 | 3,328.93 | 12/28 | 9,886.58 |
| 12/13 | 8,328.93 | 12/29 | 7,264.13 |
| 12/15 | 2,865.58 | 12/30 | 11,776.13 |
| 12/16 | 2,915.58 | | |

12:52 PM

01/03/23

# Name Your Sport
# Reconciliation Detail
### TD Chap 11 # 0829, Period Ending 12/31/2022

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 2,518.61 |
| **Cleared Transactions** | | | | | | |
| **Checks and Payments - 15 items** | | | | | | |
| Check | 11/22/2022 | | AmTrust | X | -675.00 | -675.00 |
| Check | 11/22/2022 | | AmTrust | X | -511.35 | -1,186.35 |
| Check | 11/22/2022 | | AmTrust | X | -419.72 | -1,606.07 |
| Check | 11/29/2022 | 101 | GA Nanak Investors... | X | -6,600.00 | -8,206.07 |
| Check | 11/29/2022 | 102 | GA Nanak Investors... | X | -6,000.00 | -14,206.07 |
| Check | 12/01/2022 | eft | intuit | X | -3,776.83 | -17,982.90 |
| Check | 12/05/2022 | eft | AmTrust | X | -498.05 | -18,480.95 |
| Check | 12/05/2022 | eft | The Home Depot | X | -112.97 | -18,593.92 |
| Check | 12/12/2022 | eft | Carosellos Pizza | X | -54.06 | -18,647.98 |
| Check | 12/12/2022 | eft | Carosellos Pizza | X | -41.70 | -18,689.68 |
| Check | 12/15/2022 | eft | intuit | X | -3,872.71 | -22,562.39 |
| Check | 12/15/2022 | eft | IRS | X | -1,590.64 | -24,153.03 |
| Check | 12/29/2022 | | intuit | X | -2,878.76 | -27,031.79 |
| Check | 12/29/2022 | | intuit | X | -282.00 | -27,313.79 |
| Check | 12/29/2022 | eft | BJ's Wholesale | X | -84.69 | -27,398.48 |
| | **Total Checks and Payments** | | | | -27,398.48 | -27,398.48 |
| | | | | | | |
| **Deposits and Credits - 18 items** | | | | | | |
| Transfer | 12/01/2022 | | | X | 19,500.00 | 19,500.00 |
| Transfer | 12/13/2022 | | | X | 5,000.00 | 24,500.00 |
| Deposit | 12/16/2022 | | Merchant Bank | X | 50.00 | 24,550.00 |
| Deposit | 12/19/2022 | | Merchant Bank | X | 155.00 | 24,705.00 |
| Deposit | 12/19/2022 | | Merchant Bank | X | 362.00 | 25,067.00 |
| Deposit | 12/19/2022 | | Merchant Bank | X | 569.00 | 25,636.00 |
| Deposit | 12/20/2022 | | Merchant Bank | X | 403.00 | 26,039.00 |
| Deposit | 12/21/2022 | | Merchant Bank | X | 190.00 | 26,229.00 |
| Deposit | 12/22/2022 | | Merchant Bank | X | 170.00 | 26,399.00 |
| Deposit | 12/23/2022 | | Merchant Bank | X | 186.00 | 26,585.00 |
| Deposit | 12/27/2022 | | Merchant Bank | X | 447.00 | 27,032.00 |
| Deposit | 12/27/2022 | | Merchant Bank | X | 610.00 | 27,642.00 |
| Deposit | 12/27/2022 | | Merchant Bank | X | 761.00 | 28,403.00 |
| Transfer | 12/27/2022 | | | X | 2,572.00 | 30,975.00 |
| Deposit | 12/28/2022 | | Merchant Bank | X | 546.00 | 31,521.00 |
| Deposit | 12/29/2022 | | Merchant Bank | X | 623.00 | 32,144.00 |
| Deposit | 12/30/2022 | | Merchant Bank | X | 839.00 | 32,983.00 |
| Deposit | 12/30/2022 | | | X | 3,673.00 | 36,656.00 |
| | **Total Deposits and Credits** | | | | 36,656.00 | 36,656.00 |
| | **Total Cleared Transactions** | | | | 9,257.52 | 9,257.52 |
| **Cleared Balance** | | | | | 9,257.52 | 11,776.13 |
| | | | | | | |
| **Uncleared Transactions** | | | | | | |
| **Checks and Payments - 1 item** | | | | | | |
| Check | 12/30/2022 | eft | Esoft Planner | | -124.00 | -124.00 |
| | **Total Checks and Payments** | | | | -124.00 | -124.00 |
| | **Total Uncleared Transactions** | | | | -124.00 | -124.00 |
| **Register Balance as of 12/31/2022** | | | | | 9,133.52 | 11,652.13 |
| | | | | | | |
| **New Transactions** | | | | | | |
| **Checks and Payments - 6 items** | | | | | | |
| Check | 01/03/2023 | eft | PSEG | | -1,857.64 | -1,857.64 |
| Check | 01/03/2023 | eft | South Jersey Gas | | -932.39 | -2,790.03 |
| Check | 01/03/2023 | | Merchant Bank | | -720.51 | -3,510.54 |
| Check | 01/03/2023 | eft | Sirius | | -15.42 | -3,525.96 |
| Check | 01/03/2023 | eft | Sirius | | -12.34 | -3,538.30 |
| Check | 01/17/2023 | eft | IRS | | -2,138.50 | -5,676.80 |
| | **Total Checks and Payments** | | | | -5,676.80 | -5,676.80 |
| | | | | | | |
| **Deposits and Credits - 4 items** | | | | | | |
| Deposit | 01/03/2023 | | Merchant Bank | | 50.00 | 50.00 |

12:52 PM

01/03/23

# Name Your Sport
## Reconciliation Detail
### TD Chap 11 # 0829, Period Ending 12/31/2022

| Type | Date | Num | Name | Clr | Amount | Balance |
|---|---|---|---|---|---|---|
| Deposit | 01/03/2023 | | Merchant Bank | | 128.00 | 178.00 |
| Deposit | 01/03/2023 | | Merchant Bank | | 386.00 | 564.00 |
| Deposit | 01/03/2023 | | Merchant Bank | | 660.00 | 1,224.00 |
| Total Deposits and Credits | | | | | 1,224.00 | 1,224.00 |
| Total New Transactions | | | | | -4,452.80 | -4,452.80 |
| **Ending Balance** | | | | | **4,680.72** | **7,199.33** |



**Bank**

America's Most Convenient Bank®                    0        STATEMENT OF ACCOUNT



NAME YOUR SPORT LLC                          Page:                              1 of 3
300 E FRONT ST                               Statement Period:    Dec 01 2022-Dec 27 2022
GLENDORA NJ 08029                            Cust Ref #:                0380-717-0-###
                                             Primary Account #:              0380

## TD Business Convenience Plus

NAME YOUR SPORT LLC                                             Account # 0380

### ACCOUNT SUMMARY

| | | | |
|---|---|---|---|
| Beginning Balance | 20,322.48 | Average Collected Balance | 2,408.20 |
| Electronic Deposits | 9,023.92 | Interest Earned This Period | 0.00 |
| | | Interest Paid Year-to-Date | 0.00 |
| Electronic Payments | 26,774.40 | Annual Percentage Yield Earned | 0.00% |
| Other Withdrawals | 2,572.00 | Days in Period | 26 |
| Ending Balance | 0.00 | | |

| | Total for this cycle | Total Year to Date |
|---|---|---|
| Grace Period OD/NSF Refund | $0.00 | $35.00 |

### DAILY ACCOUNT ACTIVITY

#### Electronic Deposits

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/01 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 205.00 |
| 12/02 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 5.00 |
| 12/05 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 950.00 |
| 12/05 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 634.00 |
| 12/05 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 583.00 |
| 12/05 | CCD DEPOSIT, MERCHANT BANKCD FINCL ADJ 5888 | 0.27 |
| 12/06 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 888 | 140.00 |
| 12/07 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 1,925.00 |
| 12/08 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 776.00 |
| 12/09 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 154.00 |
| 12/12 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 1,107.00 |
| 12/12 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 739.00 |
| 12/12 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 154.00 |
| 12/12 | DEBIT CARD CREDIT, AUT 121222 VISA DDA REF AMZN MKTP US      AMZN COM BILL * WA 8367 | 26.65 |
| 12/13 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 173.00 |
| 12/14 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 957.00 |
| 12/15 | CCD DEPOSIT, MERCHANT BANKCD DEPOSIT 5888 | 495.00 |
| | Subtotal: | 9,023.92 |

# How to Balance your Account

Page:         2 of 3

**Begin by adjusting your account register as follows:**

- Subtract any services charges shown on this statement.

- Subtract any automatic payments, transfers or other electronic withdrawals not previously recorded.

- Add any interest earned if you have an interest-bearing account.

- Add any automatic deposit or overdraft line of credit.

- Review all withdrawals shown on this statement and check them off in your account register.

- Follow instructions 2-5 to verify your ending account balance.

1. Your ending balance shown on this statement is:

2. List below the amount of deposits or credit transfers which do not appear on this statement. Total the deposits and enter on Line 2.

3. Subtotal by adding lines 1 and 2.

4. List below the total amount of withdrawals that do not appear on this statement. Total the withdrawals and enter on Line 4.

5. Subtract Line 4 from 3. This adjusted balance should equal your account balance.

| | |
|---|---|
| Ending Balance | 0.00 |
| Total Deposits | + |
| Sub Total | |
| Total Withdrawals | - |
| Adjusted Balance | |

| DEPOSITS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Deposits** | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Withdrawals** | | |

**FOR CONSUMER ACCOUNTS ONLY — IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS.**

If you need information about an electronic fund transfer or if you believe there is an error on your bank statement or receipt relating to an electronic fund transfer, telephone the bank immediately at the phone number listed on the front of your statement or write to:

**TD Bank, N.A., Deposit Operations Dept, P.O. Box 1377, Lewiston, Maine 04243-1377**

We must hear from you no later than sixty (60) calendar days after we sent you the first statement upon which the error or problem first appeared. When contacting the Bank, please explain as clearly as you can why you believe there is an error or why more information is needed. Please include:

- Your name and account number.
- A description of the error or transaction you are unsure about.
- The dollar amount and date of the suspected error.

When making a verbal inquiry, the Bank may ask that you send us your complaint in writing within ten (10) business days after the first telephone call.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error, so that you have the use of the money during the time it takes to complete our investigation.

**INTEREST NOTICE**

Total interest credited by the Bank to you this year will be reported by the Bank to the Internal Revenue Service and State tax authorities. The amount to be reported will be reported separately to you by the Bank.

**FOR CONSUMER LOAN ACCOUNTS ONLY — BILLING RIGHTS SUMMARY**

In case of Errors or Questions About Your Bill:

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at P.O. Box 1377, Lewiston, Maine 04243-1377 as soon as possible. We must hear from you no later than sixty (60) days after we sent you the FIRST bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

FINANCE CHARGES: Although the Bank uses the Daily Balance method to calculate the finance charge on your Moneyline/Overdraft Protection account (the term "ODP" or "OD" refers to Overdraft Protection), the Bank discloses the Average Daily Balance on the periodic statement as an easier method for you to calculate the finance charge. The finance charge begins to accrue on the date advances and other debits are posted to your account and will continue until the balance has been paid in full. To compute the finance charge, multiply the Average Daily Balance times the Days in Period times the Daily Periodic Rate (as listed in the Account Summary section on the front of the statement). The Average Daily Balance is calculated by adding the balance for each day of the billing cycle, then dividing the total balance by the number of Days in the Billing Cycle. The daily balance is the balance for the day after advances have been added and payments or credits have been subtracted plus or minus any other adjustments that might have occurred that day. There is no grace period during which no finance charge accrues. Finance charge adjustments are included in your total finance charge.



**Bank**

America's Most Convenient Bank®

STATEMENT OF ACCOUNT

NAME YOUR SPORT LLC

| | |
|---|---|
| Page: | 3 of 3 |
| Statement Period: | Dec 01 2022-Dec 27 2022 |
| Cust Ref #: | 0380-717-0-### |
| Primary Account #: | 0380 |

## DAILY ACCOUNT ACTIVITY

### Electronic Payments

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/01 | eTransfer Debit, Online Xfer Transfer to CK 0829 | 19,500.00 |
| 12/01 | DEBIT CARD PURCHASE, AUT 113022 VISA DDA PUR MY WAY DELI GRILL GLENDORA * NJ 8367 | 46.15 |
| 12/01 | DEBIT CARD PURCHASE, AUT 112922 VISA DDA PUR CHICK FIL A 03430 FLEMINGTON * NJ 8367 | 13.12 |
| 12/01 | DEBIT CARD PURCHASE, AUT 113022 VISA DDA PUR POPEYES 11139 MAPLE SHADE * NJ 8367 | 11.29 |
| 12/02 | CCD DEBIT, CAPITAL ONE CRCARDPMT 3MXN0JO24AEXLCN | 285.00 |
| 12/02 | CCD DEBIT, AUTHNET GATEWAY BILLING 126183832 | 13.55 |
| 12/05 | ACH DEBIT, COMCAST 8499051 400101907 3573202 | 685.80 |
| 12/05 | CCD DEBIT, MERCHANT BANKCD DISCOUNT 5888 | 322.21 |
| 12/06 | CCD DEBIT, CAPITAL ONE CRCARDPMT 3MY9R70GYW3OD7U | 422.00 |
| 12/06 | CCD DEBIT, CAPITAL ONE CRCARDPMT 3MY9RJTFAFASX8Z | 255.00 |
| 12/09 | ELECTRONIC PMT-WEB, WASTE MANAGEMENT INTERNET 2366 | 220.28 |
| 12/13 | eTransfer Debit, Online Xfer Transfer to CK 0829 | 5,000.00 |
| | Subtotal: | 26,774.40 |

### Other Withdrawals

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/27 | ACCOUNT CLOSED | 2,572.00 |
| | Subtotal: | 2,572.00 |

## DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 11/30 | 20,322.48 | 12/09 | 3,920.35 |
| 12/01 | 956.92 | 12/12 | 5,947.00 |
| 12/02 | 663.37 | 12/13 | 1,120.00 |
| 12/05 | 1,822.63 | 12/14 | 2,077.00 |
| 12/06 | 1,285.63 | 12/15 | 2,572.00 |
| 12/07 | 3,210.63 | 12/27 | 0.00 |
| 12/08 | 3,986.63 | | |

Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

Mail - Sandra Ford - Outlook

Case 22-18730-ABA    Doc 36-1    Filed 01/31/23    Entered 01/31/23 18:29:19    Desc
Exhibit A-I    Page 41 of 71

12:53 PM

01/03/23

# Name Your Sport
## Reconciliation Detail
### Operating #0380  TD Bank, Period Ending 12/31/2022

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 20,322.48 |
| **Cleared Transactions** | | | | | | |
| **Checks and Payments - 13 items** | | | | | | |
| Transfer | 12/01/2022 | | | X | -19,500.00 | -19,500.00 |
| Check | 12/01/2022 | eft | My Way Deli & Grill | X | -46.15 | -19,546.15 |
| Check | 12/01/2022 | | ChickFilA | X | -13.12 | -19,559.27 |
| Check | 12/01/2022 | | Popeyes | X | -11.29 | -19,570.56 |
| Check | 12/02/2022 | eft | Capital One | X | -285.00 | -19,855.56 |
| Check | 12/02/2022 | eft | Gateway Billing | X | -13.55 | -19,869.11 |
| Check | 12/05/2022 | eft | Comcast | X | -685.80 | -20,554.91 |
| Check | 12/05/2022 | eft | Merchant Bank | X | -322.21 | -20,877.12 |
| Check | 12/06/2022 | eft | Capital One | X | -422.00 | -21,299.12 |
| Check | 12/06/2022 | eft | Capital One | X | -255.00 | -21,554.12 |
| Check | 12/09/2022 | eft | Waste Management | X | -220.28 | -21,774.40 |
| Transfer | 12/13/2022 | | | X | -5,000.00 | -26,774.40 |
| Transfer | 12/27/2022 | | | X | -2,572.00 | -29,346.40 |
| **Total Checks and Payments** | | | | | -29,346.40 | -29,346.40 |
| | | | | | | |
| **Deposits and Credits - 17 items** | | | | | | |
| Deposit | 12/01/2022 | | Merchant Bank | X | 205.00 | 205.00 |
| Deposit | 12/03/2022 | | Merchant Bank | X | 5.00 | 210.00 |
| Deposit | 12/05/2022 | | Merchant Bank | X | 0.27 | 210.27 |
| Deposit | 12/05/2022 | | Merchant Bank | X | 583.00 | 793.27 |
| Deposit | 12/05/2022 | | Merchant Bank | X | 634.00 | 1,427.27 |
| Deposit | 12/05/2022 | | Merchant Bank | X | 950.00 | 2,377.27 |
| Deposit | 12/06/2022 | | Merchant Bank | X | 140.00 | 2,517.27 |
| Deposit | 12/07/2022 | | Merchant Bank | X | 1,925.00 | 4,442.27 |
| Deposit | 12/08/2022 | | Merchant Bank | X | 776.00 | 5,218.27 |
| Deposit | 12/09/2022 | | Merchant Bank | X | 154.00 | 5,372.27 |
| Deposit | 12/12/2022 | | Amazon | X | 26.65 | 5,398.92 |
| Deposit | 12/12/2022 | | Merchant Bank | X | 154.00 | 5,552.92 |
| Deposit | 12/12/2022 | | Merchant Bank | X | 739.00 | 6,291.92 |
| Deposit | 12/12/2022 | | Merchant Bank | X | 1,107.00 | 7,398.92 |
| Deposit | 12/13/2022 | | Merchant Bank | X | 173.00 | 7,571.92 |
| Deposit | 12/14/2022 | | Merchant Bank | X | 957.00 | 8,528.92 |
| Deposit | 12/15/2022 | | Merchant Bank | X | 495.00 | 9,023.92 |
| **Total Deposits and Credits** | | | | | 9,023.92 | 9,023.92 |
| **Total Cleared Transactions** | | | | | -20,322.48 | -20,322.48 |
| **Cleared Balance** | | | | | -20,322.48 | 0.00 |
| **Register Balance as of 12/31/2022** | | | | | -20,322.48 | 0.00 |
| **Ending Balance** | | | | | **-20,322.48** | **0.00** |

# EXHIBIT F

# EXHIBIT F

**EXHIBIT F**

**Summary of Debtor's Periodic Operating Reports**

      Only two monthly operating reports have come due since the Debtor filed its petition. Nonetheless, these two reports show that the Debtor maintains a positive cash flow and that its net income is improving. These reports also predict that the cash flow will continue to improve based upon anticipated receipts and expenses. These reports also show that the Debtor's total business throughput, in terms of both cash receipts and cash disbursements, exceed its predictions, which the Debtor can leverage to improve its overall financial health.

# EXHIBIT G

# EXHIBIT G

**STANDARD FORM OF SHOPPING CENTER LEASE**
**(See Index On Last Page)**

THIS AGREEMENT dated this 15th day of November 2018, by and between the LANDLORD, SINTARA CORP, having offices at 5001 Hadley Rd, South Plainfield, New Jersey, 07080, and the

TENANT: Name Your Sport LLC
ADDRESS: 300 E Front Street
CITY: Glendora, NJ 08029
PHONE: 856 341 3115
Email: mikephicko6@gmail.com

**W I T N E S S E T H   T H A T:**

LANDLORD hereby demises and rents to TENANT, and TENANT hereby hires and takes from LANDLORD, that certain store, hereinafter specified, upon the terms, conditions and covenants likewise hereinafter specified.

1. Demised Premises. The premises which is the subject of this Lease, hereinafter the "Demised Premises", is more particularly designated as follows:

A. Property: **The Runnemede Plaza,**
835 East Clements Bridge Road, Suite 9, Runnemede, NJ 08078.

B. Consisting of approximately 12,500 square feet.

C. Previous occupant: Powerhouse Gym

In addition to exclusive use of the Demised Premises, TENANT shall have for the use and benefit of TENANT, its agents, employees, licensees and subtenants, the non-exclusive right in common with LANDLORD and other present and future owners, tenants and their agents, employees, customers, licensees and subtenants, to use the common and parking areas. Said common use of the said parking area or any part thereof shall not constitute TENANT'S Demised Premises and LANDLORD reserves the right to change the entrances, exits, traffic lanes, boundaries and locations of such parking area from time to time, and to build upon same without limit except as may be imposed by the municipality, provided only that at all times there shall be maintained sufficient parking for all tenants of the Shopping Center. The TENANT in the use of **said** common and parking areas agrees to comply with such reasonable rules and regulations as the LANDLORD may adopt from time to time for the orderly operation of said areas, including but not limited to the restricting of employee parking to designated areas and the regulation of the storage and removal of TENANT'S refuse and the furnishing, within five (5) days of written request by LANDLORD, of the license plate numbers of all automobiles used by all employees of TENANT at the Demised Premises.

2. Term. The base term of this Lease shall be as follows:

A. Duration: 5 Years.
B. Commencement date: November 15, 2018
C. Termination date: May 31, 2024
D. Rent Start date: June 1, 2019

3. Base Rent. TENANT shall pay to LANDLORD the following "Base Rent" payable on the first of each and every month in advance.

**Year 1: $4,000.00/month (6/1/2019 to 5/31/2020)**
**Year 2: $5,000.00/month (6/1/2020 to 5/31/2021)**
**Year 3: $6,000.00/month (6/1/2021 to 5/31/2022)**

1

**Year 4: $6,000.00/month (6/1/2022 to 5/31/2023)**
**Year 5: $6,000.00/month (6/1/2023 to 5/31/2024)**

**Rent abatement period: TENANT 's rent abatement period of the lease for fit out, build out, repairs and set up, is as follows:**

**11/16/2018 to 5/31/2019    $0.00 /month**

All such payments shall be made to LANDLORD'S address, above, unless LANDLORD shall direct otherwise by written notice pursuant to Paragraph 31 hereof. Rent shall commence to accrue on the Commencement Date in Paragraph 2 above, except that if on such date the LANDLORD -is unable to secure possession from a prior tenant or if, on such date, LANDLORD has not substantially completed all work required of LANDLORD on Schedule B annexed, then rent shall not commence to accrue until possession is tendered or LANDLORD'S work is substantially completed, or both as the case may be, and LANDLORD so notifies TENANT in writing. Notwithstanding the non-arrival of the Commencement Date or the non-completion of LANDLORD'S work, or both, rent shall commence to accrue on such date (hereinafter the "Accrual Date") as TENANT commences to do business at the Demised Premises, but TENANT may have access to the Demised Premises at any time hereafter (if vacant), for the purpose of verifying the progress and conformance of LANDLORD'S work (if any), for measuring, for doing any of TENANT'S work permitted hereunder, and for fixturing or otherwise moving into the premises, none of which, if done prior to the Commencement Date shall cause rent to accrue. On the Accrual Date TENANT shall pay LANDLORD that calendar month's rent, which shall be apportioned if the Accrual Date is not on the, first of the calendar month.

4. <u>Supplemental Rent.</u> In addition to the Base Rent in Paragraph 3 hereinabove, and commencing at the Accrual Date, TENANT shall pay to LANDLORD that percent of the total cost of the following items as TENANT'S total floor area bears to the total rentable floor area of the Shopping Center, herein called Supplemental Rent:

A. All real estate taxes on the Shopping Center containing the Demised Premises ("Shopping Center") including land, building, and improvements thereon. Said real estate taxes shall include all real estate taxes and assessments that are levied upon and/or assessed against the Shopping Center, including any taxes which may be levied on rents, except that as to assessments, LANDLORD shall elect to pay same over the longest period permitted by law and only the current year's installment, including interest, shall be added into TENANT'S calculation. In addition, TENANT shall reimburse LANDLORD for TENANT'S proportionate share (as above defined) of LANDLORD'S reasonable costs incurred in appealing taxes and/or assessments on the property of which the Demised Premises is a part, including legal fees, expert witness fees and other proper costs whether the appeal is successful or unsuccessful. If any such appeal is successful, any recovery net of such expenses shall be credited (proportionately) to TENANT'S obligations hereunder.

B. All premiums for all policies of insurance on the Shopping Center, including fire, extended coverage, plate glass, boiler, sprinkler, liability or other insurance whatsoever LANDLORD deems necessary 'or advisable from time to time. In the event LANDLORD shall adopt a plan of self-insurance, TENANT shall make a pro rata contribution thereto, and pay a pro rata share of any excess insurance or umbrella policy. In the event of, and to the extent that LANDLORD self-insures as aforesaid, the premiums to which TENANT will contribute pro rata, shall be the premiums quoted to LANDLORD for identical coverage to that being self-insured except that TENANT shall have the right at any time to obtain and submit to LANDLORD a quotation for insurance identical to that which is then being self-insured and if the quotation obtained by TENANT is less, said lesser figure shall be the basis for TENANT's contribution.

2

C. All costs to maintain, repair and replace common areas, parking lots, sidewalks, canopies, driveways, hallways and utility rooms, lines and facilities and other areas or things used by, or benefiting, the tenants of the Shopping Center. Said costs shall include all costs to supervise and administer said common areas and such fees as may be paid to a third party in connection with same and shall in any event include a minimum fee to LANDLORD to supervise and administer same in an amount equal to ten (10%) percent of the total amounts disbursed to others. There shall also be included any parking charges, utilities surcharges, or any other costs levied, assessed or imposed by, or at the direction of, or resulting from statutes or regulations, or interpretations thereof, promulgated by any governmental authority in connection with the use or occupancy of the premises or the parking facilities serving the premises.

At or about the Accrual Date LANDLORD shall submit to TENANT a statement of the anticipated monthly Supplemental Rent for the period between such Accrual Date and the following January and TENANT shall pay this Supplemental Rent on a monthly basis concurrently with the payment of the Base Rent. TENANT shall continue to make said monthly payments until notified by LANDLORD of a change thereof. By March 1 of each year LANDLORD shall endeavor to give TENANT a statement showing the total Supplemental Rent for the Shopping Center for the prior calendar year and TENANT'S allocable share thereof, prorated from the commencement of rental. In the event the total of the monthly payments which TENANT has made for the prior calendar year be less than the TENANT'S actual share of such Supplemental Rent, then TENANT shall pay the difference in a lump sum within thirty days after receipt of such statement from LANDLORD and shall concurrently pay the difference between the total previous monthly payments made in the then calendar year and the total of monthly payments calculated as Supplemental Rent based on the prior year's experience. Any overpayment by TENANT shall be credited towards the Supplemental Rent next coming due. The actual Supplemental Rent for the prior year shall be used for purposes of calculating the anticipated monthly Supplemental Rent for the then current year with actual determination of such Supplemental Rent after each calendar year as above provided; excepting that in any year in which resurfacing of any parking area is contemplated LANDLORD shall be permitted to include the anticipated cost of same as part of the estimated monthly Supplemental Rent. Even though the term has expired and TENANT has vacated the premises, when the final determination is made of TENANT'S share of said Supplemental Rent for the year in which this Lease terminates, TENANT shall immediately pay any increase due over the estimated Supplemental Rent previously paid and, conversely, any overpayment made shall be immediately rebated by LANDLORD to TENANT, and this provision shall survive termination for said purpose. Failure of LANDLORD to submit statements as called for herein shall not be deemed to be a waiver of TENANT'S requirement to pay sums as herein provided.

**Supplemental rent is $0/month for Year 1 to Year 5**

5. <u>Rent Payment Without Deduction or Delay.</u>

A. Any sums due the TENANT from the LANDLORD under any of the provisions of this Lease, or arising from or out of the LANDLORD'S failure to comply with, or perform any of the terms of this Lease, except if LANDLORD'S default should effect the closure of TENANT'S operation, shall in all cases be enforced by TENANT by means other than deduction from rent, and the attempt by TENANT to deduct all or any part of the rent due, without court adjudication, shall constitute a breach of this Lease. No payment by TENANT or receipt by LANDLORD of a lesser amount than any payment of Base Rent or Supplemental Rent herein stipulated shall be deemed to be other than on account of the earliest stipulated such rent or rents then due and payable.

B. TENANT hereby acknowledges that late payment by TENANT to LANDLORD of Base Rent or Supplemental Rent or other sums due hereunder will cause LANDLORD to incur costs not contemplated

3

by this lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed upon LANDLORD by terms of any mortgage or trust deed covering the Demised Premises. Accordingly, if any installment of rent or any sum due from TENANT shall not received by LANDLORD or LANDLORD'S designee within seven (7) days that said amount is due, then TENANT shall pay to LANDLORD a late charge equal to ten (10%) percent of such overdue amount, plus any attorneys' fees incurred by LANDLORD by reason of TENANT'S failure to pay rent and/or other charge when due hereunder. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs that LANDLORD will incur by reason of the late payment by TENANT. Acceptance of such late charge by the LANDLORD shall in no event constitute a waiver of TENANT'S default with respect to such overdue amount, nor prevent LANDLORD from exercising any of the other rights and remedies granted hereunder. Any late payment of Base Rent, Supplemental Rent or Additional Rent not accompanied by such late charge may, at LANDLORD'S option be returned to Tenant and treated as if not made at all, or else, by written notice, added to the next month's Base Rent. The aforesaid late charge shall be repeated each month that the same rent or charge remains unpaid. If at any time within the course of this Lease or any extension or renewal thereof late charges shall accrue from the TENANT to the LANDLORD under the terms of this Paragraph 5B in respect to any three (3) months out of a six (6)-consecutive-month period, then TENANT shall be considered in default of this Lease at the option of LANDLORD, notwithstanding it may have paid the first two installments of rent and late charges relating thereto. If any such late charge is payable more than twice during the term of this Lease, or if twice during the Lease term, a check of TENANT'S shall not be paid by TENANT'S bank immediately upon presentation, LANDLORD may require, by giving written notice to TENANT that all future rental payments are to be made by cash, cashier's check, or money order, and that the delivery of TENANT'S personal or corporate check will no longer constitute a payment of rental as provided in this Lease. Any acceptance of personal or corporate check thereafter by LANDLORD shall not be construed as a subsequent waiver of said rights except as to the check so accepted.

6. LANDLORD'S Lien. LANDLORD is hereby granted a lien upon all personal property of TENANT within the demised premises to secure any sums due from TENANT hereunder upon the following conditions:

A. The lien granted to LANDLORD hereby shall be subject and subordinate to any purchase money liens on the TENANT'S personal property.

B. So long as TENANT remains current on all representations and obligations hereunder, it shall have the free right of disposition of all such personal property to the extent supported by fair consideration.

C. In the event of any breach or threatened breach by TENANT of its representations or commitments hereunder, including any actual or threatened disposition of personal property from the Demised Premises without fair value, LANDLORD'S right to a lien in respect to TENANT'S personal property may be enforced by application to a court of competent jurisdiction (1) to restrain the disposition or movement of the TENANT'S personal property pending determination of the sum due from TENANT to LANDLORD, provided, however, that so long as TENANT remains open for business TENANT shall not be restrained from disposing of merchandise held for sale in the ordinary course of business so long as all proceeds shall be applicable, in such manner as the court determines, to LANDLORD'S debt; and (2) adjudicating the sum due to LANDLORD, if any; and (3) directing the liquidation of the personal property of TENANT subjected to said lien, but only for the purpose of satisfying an existing obligation to LANDLORD.

4

D. To effectuate the lien granted hereby LANDLORD shall have the right, if TENANT shall close for business, and subject to TENANT reopening for business, to padlock the Demised Premises and otherwise to reasonably secure and segregate the liened property.

E. In no event shall LANDLORD, acting to enforce the lien granted by this paragraph, be liable to TENANT or to any other person claiming said personal property through TENANT. F. The lien granted to LANDLORD by virtue of this paragraph shall be separate from, and in addition to, any and all other rights of the LANDLORD by reason of any such default by the TENANT.

7. <u>Use</u>. TENANT shall use the Demised Premises only as **Sports** _Training_ ~~MV~~ **Club**; and agrees not to otherwise use, nor to permit others to otherwise use the Demised Premises. This limitation shall survive any assignment or sublettings to **which LANDLORD** may consent as herein provided. Further, TENANT shall not do, nor permit to be done, anything which will in any way increase the existing rate of, or effect any fire or other insurance upon the Shopping Center or any of its contents, or cause a cancellation of any insurance policy covering said Shopping Center or any part thereof or any of its contents. TENANT shall not permit injury to the Demised Premises or to the Shopping Center outside the Demised Premises by any action such as (1) Concentrating loads on floors, roofs or any other area beyond their capacity, (2) Depositing, or permitting the deposit of any item or substance into storm or sanitary sewer lines which- might obstruct or damage same, (3) Discharging excessive quantities of water or any quality of effluent which might overtax or damage the septic system or sewer plant, if any, serving the Demised Premises or the Shopping Center, (4) Making or permitting any hole in any roof, wall, floor or outside area, without written permission from LANDLORD, (5) Producing any vibration liable to damage or weaken the structure of the Demised Premises or of the LANDLORD'S premises or to undermine the ground supporting same. TENANT shall not do or permit anything to be done in or about the Demised Premises which will in any way obstruct or interfere with the rights of other tenants or occupants of the Shopping Center or injure or annoy them nor use or allow the Demised Premises to be used for any improper, immoral, unlawful or objectionable purpose; nor shall TENANT cause, maintain or permit any nuisance in, on or about the Demised Premises: TENANT shall not commit or allow to be committed any waste in or upon the Demised Premises. TENANT shall not use the Demised Premises or permit anything to be done in or about the Demised Premises, which will in any way conflict with any law, statute, ordinance or governmental rule or regulation now in force or which may hereafter be enacted or promulgated. TENANT shall, at its sole cost and expense, promptly comply with all laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force and with the requirements of any board of fire underwriters or other similar bodies now or hereafter constituted relating to or effecting the condition, use or occupancy of the Demised Premises, excluding structural changes not related to or effected by TENANT'S improvements or acts. The judgment of any court of competent jurisdiction or the admission of TENANT in any action against TENANT, whether LANDLORD be a party thereto or not, that TENANT has violated any law, statute, ordinance or governmental rule, regulation or requirement, shall be conclusive of that fact as between the LANDLORD and TENANT.

TENANT strictly, <u>SHALL NOT</u> produce, reproduce, or relay any excessive noise, sound, music, vibration, etc. that interferes with its adjacent neighbors, especially to the <u>Motor Vehicle Commission</u> side.

8. <u>Assignment.</u>    TENANT shall neither voluntarily, nor by operation of law, assign, transfer, mortgage, pledge, hypothecate or encumber this lease or any interest herein, and shall not sublet the said Demised Premises or any part thereof, or any right or privilege appurtenant thereto, or allow any other person (the employees, agents, servants and invitees of TENANT excepted) to occupy or use the said Demised Premises, or any portion thereof, without first obtaining the written consent of LANDLORD, which consent shall not be unreasonably withheld. If TENANT is a corporation or partnership,

5

any transfer, legal or equitable, of the stock of said corporation or of any partnership interest which, together with any and all prior such transfers shall constitute a change in excess of 50 percent of the legal or equitable ownership of the corporation or partnership from the date of the signing of this Lease shall be deemed an assignment requiring the consent of LANDLORD. A consent to one assignment, subletting, occupation or use by any other person shall not be deemed to be a consent to any subsequent assignment, subletting, occupation or use by another person. Consent to any such assignment or subletting shall in no way relieve TENANT of any liability under this Lease. Any such assignment or subletting without such consent shall be void, and shall, at the option of the LANDLORD, constitute a default under the terms of this Lease, provided however, that no such assignment or subletting occasioned by reason of the death of TENANT or of TENANT'S principal shall constitute a breach. In the event that LANDLORD shall consent to a sublease or assignment hereunder, TENANT shall pay LANDLORD'S reasonable attorneys' fees incurred in connection with the processing of documents necessary to giving of such consent. LANDLORD shall not be obligated to consider and respond to any request for consent under this paragraph unless such request is in writing, contains a full explanation of the proposal and provides sufficient information about the financial standing and experience of the proposed assignee or subtenant for LANDLORD to make an informed judgment. Any such written request shall also operate, notwithstanding the then, actual intent of TENANT, as a tender to LANDLORD of a mutual cancellation of this Lease, which tender LANDLORD may accept by writing to TENANT within fourteen (14) days, provided however, no such written request shall operate as such tender if made in conjunction with the sale of TENANT'S business. Upon such acceptance, this Lease shall be terminated as of the date that the proposed assignment or subletting was to become effective, subject to any obligations of the TENANT accruing prior to said termination date. TENANT acknowledges that its sole remedy with respect to any assertion that LANDLORD'S failure to consent to any assignment or sublet is unreasonable shall be the remedy of specific performance and TENANT shall have no further claim or cause of action against LANDLORD as a result of LANDLORD'S actions in refusing to consent. In the event of any approved assignment or sublease, all rents or other payments received by TENANT in excess of the payments due from TENANT to LANDLORD pursuant to this Lease shall be paid to LANDLORD as additional rent. On demand, any assignee or subtenant shall make payments directly to LANDLORD without, however, creating a direct LANDLORD-TENANT relation between them or releasing TENANT herefrom.

9. TENANT'S Work.


    A. TENANT has examined the Demised Premises; and accepts them in their present condition (except as otherwise expressly provided herein) and with no representations on the part of LANDLORD or its agents as to the present or future condition of the said premises or the Shopping Center, except as provided in the next following paragraph. TENANT shall keep the Demised Premises in good condition, and shall redecorate, paint and renovate the said premises as may be necessary to keep them in good repair and appearance, including without limitation, the maintenance, replacement and repair of any storefront, doors, window casements, glazing, plumbing, pipes, electrical wiring and conduits, heating system and air conditioning system (when there is an air conditioning system). TENANT shall obtain a service contract for repairs and maintenance of any and all HVAC system, said maintenance contract to conform to the requirements under the warranty, if any, on said system. TENANT shall, upon the expiration or sooner termination of this lease, surrender the Demised Premises to the LANDLORD in good condition, broom clean, ordinary wear and tear excepted. Any damage outside the demised premises caused by TENANT's use of the Demised Premises shall be repaired at the sole cost and expense of TENANT.

B. TENANT shall not make or allow to be made any alterations, additions or improvements to or of the Demised Premises or any part thereof without first obtaining the written consent of LANDLORD; however, any alterations, additions or improvements to or of said Demised Premises, with or without such consent, including, but not limited to, ๐ partitions, electric and plumbing fixtures, window treatments, wall covering, paneling and built-in cabinet work, but excepting movable furniture and trade fixtures, shall, at LANDLORD'S option, become a part of the realty and belong to the LANDLORD and shall be surrendered with the Demised Premises. To effectuate this option, TENANT further agrees not to remove any such improvements without the consent of the LANDLORD in writing. In the event LANDLORD consents to the making of any alterations, additions or improvements to the Demised Premises by TENANT, the same shall be made by TENANT at TENANT'S sole cost and expense and TENANT shall keep the Demised Premises and the property in which the Demised Premises are situated free from any liens arising out of any work performed, materials furnished or obligations incurred by or on behalf of TENANT. LANDLORD may require, at LANDLORD'S sole option, that TENANT shall provide to LANDLORD, at TENANT'S sole cost and expense, a lien and completion bond in an amount equal, to one and one-half (1 1/2) times the estimated cost of any improvements, additions, or alterations in the Demised Premises which the TENANT desires to make, thirty (30) days in advance thereof, to insure LANDLORD against any liability for mechanics' and materialmen's liens and to insure completion of the work. Upon expiration or sooner termination of the term hereof, TENANT shall, upon written demand by LANDLORD at TENANT'S sole cost and expense, forthwith and with all due diligence, remove any alterations, additions, or improvements made by TENANT, which LANDLORD shall not opt to retain and TENANT shall, forthwith and with all due diligence, at its sole cost and expense, repair any damage to the Demised Premises caused by such removal.

C. There may be annexed hereto an "EXHIBIT C - Schedule of TENANT'S Work" in the Demised Premises. If so, it shall constitute not only the LANDLORD'S consent to said work as required above, but also TENANT'S commitment and agreement to (i) obtain all necessary municipal and state approvals before commencing work; (ii) to do all such work, using good quality materials and workmanship, and (iii) to pay for same, as soon as reasonably possible in the light of the availability of possession and the progress of LANDLORD'S work (if any).

D. Said covenant by TENANT is a substantial inducement for LANDLORD entering into this Lease and it is also a condition hereof, breach of which shall entitle LANDLORD, at its option, to terminate upon written notice providing sufficient time is allowed to TENANT to complete such work.

10.    <u>LANDLORD'S Work.</u>

A.    LANDLORD shall repair and maintain the structural portions of the Demised Premises, including the exterior walls and roof, unless such maintenance and repairs are necessitated in part or in whole by the act, neglect, fault or omission of the TENANT, its agents, servants, employees, invitees, or by any damage caused by breaking and entering, in which case TENANT shall pay to LANDLORD the actual cost of such maintenance and repairs. LANDLORD shall not be liable for any failure to make such repairs or to perform any maintenance unless such failure shall persist for an unreasonable time after written notice of the need of such repairs or maintenance is given to LANDLORD by TENANT and there shall be no abatement of rent and no liability of LANDLORD by reason of any injury to or interference with TENANT's business arising from the making of, or failure to make, any repairs, alterations or improvements in or to any portion of the Shopping Center or the Demised Premises or in or to fixtures, appurtenances and equipment therein unless TENANT ceases to do business as a necessary result thereof, and only during the period of such cessation. LANDLORD or its agents shall not be liable for any

loss or damage to persons or property resulting from fire, explosion, falling plaster, steam, gas, electricity, water or rain which may leak from any part of the Shopping Center or from the pipes, appliances or plumbing works therein or from the roof, street or subsurface or from any other place resulting from dampness or any other cause whatsoever, unless caused by or due to the negligence of LANDLORD, its agents, servants or employees. LANDLORD or its agents shall not be liable for interference with the light, air, or for any latent defect in the Demised Premises.

B. There may be annexed hereto a "EXHIBIT B – Schedule of LANDLORD'S Work" in the Demised Premises. If so, it shall constitute LANDLORD'S covenant to do all such work and pay for same, using good quality materials and workmanship, and to complete same by the Commencement Date if reasonably possible in light of the availability of the premises and the progress of TENANT'S work (if any). In the event said LANDLORD'S work is not substantially completed within thirty (30) days after said Commencement Date, TENANT may, upon ten (10) days' written notice, terminate this Lease and recover any security or rent paid to LANDLORD and this shall be TENANT'S sole remedy therefor; but TENANT may not terminate this Lease if completion is prevented by events beyond the reasonable control of LANDLORD.

C. TENANT shall at once report in writing to LANDLORD any defective condition known to him, which LANDLORD is required to repair, and failure to so report such defects shall make TENANT responsible to LANDLORD for any liability to third parties incurred by LANDLORD by reason of such defect.

## 11. Liability and Insurance Therefor.

A. TENANT shall indemnify and hold harmless LANDLORD against and from any and all claims whether within or without the Demised Premises arising from TENANT'S use of the Demised Premises or from the conduct of its business or from any activity, work, or other things done, permitted or suffered by the TENANT in or about the Demised Premises, and shall further indemnify and hold harmless LANDLORD against and from any and all claims arising from any breach or default in the performance of any obligation on TENANT'S part to be performed under the terms of this Lease, or arising from any act or negligence of TENANT, or any officer, agent, employee, guest, or invitee of TENANT, and from all costs, attorneys' fees, and liabilities incurred in or about the defense of any such claim or any action or proceeding brought thereon and in case any action or proceeding be brought against LANDLORD by reason of such claim, TENANT upon notice from LANDLORD shall defend the same at TENANT'S expense by counsel reasonably satisfactory to LANDLORD. TENANT, as a material part of the consideration to LANDLORD, hereby assumes all risk of damage to property or injury to persons in, upon or about the Demised Premises, from any cause other than LANDLORD'S negligence; and TENANT hereby waives all claims in respect thereof against LANDLORD. TENANT shall give prompt notice to LANDLORD in case of casualty or accidents in the Demised Premises. This Paragraph 11 shall survive the termination of this Lease.

B. TENANT shall, at TENANT's expense, obtain and keep in force during the term of this lease a policy of comprehensive public liability insurance insuring LANDLORD and TENANT against any liability arising out of the ownership, use, occupancy or maintenance of the Demised Premises and all areas appurtenant thereto. Such insurance shall be in the amount of not less than Two million ($2,000,000.00) Dollars against liability for personal injury or death and in the amount of not less than Three Hundred Thousand ($500,000.00) Dollars against liability for property damage. The limit of any such insurance shall not, however, limit the liability of the TENANT hereunder. TENANT may provide this insurance under a blanket policy, provided that said insurance shall have a LANDLORD'S protective liability endorsement attached thereto. If TENANT shall fail to procure and maintain said insurance, LANDLORD may, but shall not be required to procure and maintain same, but at the expense of TENANT. Insurance required hereunder shall be in companies rated

A:XII or better in "Best's Key Rating Guide". TENANT shall deliver to LANDLORD, prior to right of entry, copies of policies of liability insurance required herein or certificates evidencing the existence and amounts of such insurance with loss payable clauses satisfactory to LANDLORD. No policy shall be cancelable or subject to reduction of coverage. All such policies shall be written as primary policies not contributing with and not in excess of coverage which LANDLORD may carry.

**TENANT shall name LANDLORD as the 'additional insured' in its insurance policy.**

C. As long as their respective insurers so permit, LANDLORD and TENANT hereby mutually waive their respective rights of recovery against each other for any loss insured by fire, extended coverage and other property insurance policies existing for the benefit of the respective parties. Each party shall apply to its insurers to obtain said waivers. Each party, shall obtain any special endorsements, if required by their insurer to evidence compliance with the aforementioned waiver.

D. Each insurance policy carried by Landlord insuring the Real Property against loss by fire and causes covered by standard coverage, and each insurance policy carried by TENANT and insuring the Demised Premises and its fixtures and contents against loss by fire, water and causes covered by standard extended coverage, shall be written in a manner so as to provide that the insurance company waives all right of recover by way of subrogation against Landlord or Tenant in connection with any loss or damage covered by such policies. Neither party shall be liable to the other for any loss or damage caused by fire, water or any of the risks enumerated in standard extended coverage insurance, provided such insurance was in effect at the time of such loss or damage. However, if such insurance policies cannot be obtained or are obtainable only by the payment of an additional premium charge above that charged by companies carrying such insurance without such waiver of subrogation, the party undertaking to carry such insurance shall notify the other party of such fact and such other party shall have a period of ten (10) days after the giving of such notice either to (a) place such insurance in companies which are reasonably satisfactory to the other party and will carry such insurance with waiver of such subrogation or (b) agree to pay such additional premium if such policy is obtainable at additional cost; and if neither (a) nor (b) is done, this Article shall be null and void for so long as either such insurance cannot be obtained or the party in whose favor a waiver of subrogation is desired shall refuse to pay the additional premium charge.

12. Access by LANDLORD.

A.    LANDLORD reserves, and shall at any and all times have, the right to enter the Demised Premises to inspect the same, to submit said Demised Premises to prospective purchasers or tenants, to post notices of non-responsibility, to repair the Demised Premises and any portion of the Shopping Center of which the Demised Premises are a part that LANDLORD may deem necessary or desirable, without abatement of rent, and may for that purpose erect scaffolding and other necessary structures where reasonably required by the character of the to be performed, always providing that the entrance to the Demised Premises shall not be unreasonably blocked thereby, and further providing that the business of TENANT shall not be interfered with unreasonably. TENANT hereby waives any claim for damages or for any injury or inconvenience to or interference with TENANT's business, any loss of occupancy or quiet enjoyment of the Demised Premises and any other loss occasioned thereby. LANLORD shall have the right to use any and all means which LANDLORD may deem proper in an emergency in order to obtain entry to the Demised Premises without liability to TENANT except for any failure to exercise due care for TENANT'S property and any entry to the Demised Premises obtained by LANDLORD by any of said means, or otherwise, shall not under any circumstances be construed or deemed to

9

be a forcible or unlawful entry into, or a detainer of, the Demised Premises, or an eviction of TENANT from the Demised Premises or any portion thereof.

B. Provided TENANT'S facilities are not materially reduced, LANDLORD shall have the right to install, maintain and alter or relocate within the Demised Premises any gas, water, electric or sewer lines which may be necessary to service the balance of the Shopping Center.

13. <u>Fire Loss.</u> If all or part of the Demised Premises is damaged or destroyed by fire or other casualty, this Lease and all of its terms, covenants and conditions shall, subject to the provisions hereinafter set forth, continue in full force and effect, as follows:

A. In the event that the damage to the Demised Premises or to the shopping center of which the Demised Premises is a part is so extensive as to amount practically to the total destruction of the Demised Premises or the Shopping Center and LANDLORD within a reasonable time after such damage shall not elect to rebuild, then and in that event, this Lease shall cease and the rent shall be apportioned to the time of the destruction. For the purposes of this paragraph, damage to fifty (50%) percent or more of the rentable area of the Shopping Center (notwithstanding that the Demised Premises may not be damaged) shall be deemed total destruction of the Shopping Center, provided LANDLORD demolishes the remainder including the demised premises if not theretofore destroyed.

B. In the event that the Demised Premises is injured, but not so destroyed (by fire or by LANDLORD'S election to demolish as set forth in Paragraph A immediately above) as to terminate the Lease, or LANDLORD elects to rebuild as provided for in Paragraph A above, then, provided that such loss is sufficiently insured and that all of the proceeds of said insurance coverage are made available to the LANDLORD by any fee or leasehold mortgagee whose interest may be superior to the LANDLORD; and further provided that the term of this Lease shall have at least three (3) years to run, and that applicable laws shall permit, then, and in those events, the LANDLORD shall repair and rebuild the Demised Premises with reasonable diligence.

C. In the event of any loss or destruction which is not provided for in "A" or "B" above, the LANDLORD may at its sole option elect to terminate this Lease effective the date of loss or elect to repair the premises and have said Lease continue in full force and effect subject to the provisions herein.

To the extent that the loss or destruction of the Demised Premises substantially interferes with the operation of the TENANT'S business, thus requiring the TENANT to temporarily close its business to the public, the Base Rent shall be abated from the date of such closing to the date the damage shall have been substantially repaired so as to enable the TENANT to continue its business.

TENANT acknowledges and agrees that LANDLORD will not carry insurance of any kind on TENANT's furniture and furnishings or on any trade fixtures, equipment, improvements, or appurtenances removable by TENANT under the provisions of this Lease, and that LANDLORD shall not be obligated to repair any damage thereto or replace the same.

Nothing herein contained shall relieve TENANT from any liability to LANDLORD or to its insurer in connection with any damage to the Demised Premises or the Shopping Center by fire or other casualty if TENANT shall be legally liable for deliberate, intentional, or wanton action.

The provisions of this paragraph shall be considered as express agreement governing any case of damage or destruction of the premises by fire or other casualty.

14. <u>Condemnation.</u>

10

A. In the event that the whole of the Shopping Center shall be lawfully condemned or taken in any manner for any public or quasi-public use, this Lease and the term and estate hereby granted shall forthwith cease and terminate as of the date of actual taking.

B. In the event of a condemnation or taking of a substantial part of the Demised Premises so as to destroy the usefulness of the Premises for the purpose for which the Premises were leased, TENANT and LANDLORD shall have the right, by delivery of notice in writing to the other within thirty (30) days after the divesting of title, to terminate this Lease and the term and estate hereby granted as of the date of actual taking.

C. If any significant part of the parking areas servicing the Shopping Center shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, such that the Tenant's business shall be demonstrably, substantially and adversely effected, then the term of this Lease shall cease and terminate as of the date of title divesting in such proceeding unless LANDLORD shall take immediate steps to provide other parking facilities substantially equal to the previously existing ratio between the common parking areas and the total building in the shopping center, and such substantially equal parking facilities shall be provided by LANDLORD at its own expense within ninety (90) days from the date of acquisition. In the event the LANDLORD shall provide such other substantially equal parking facilities, then this Lease shall continue in full force and effect. In any event, TENANT shall have no claim against LANDLORD for the value of any unexpired term of this Lease.

D. In the event of a partial condemnation of the Demised Premises which is not substantial enough to destroy the usefulness of the Demised Premises for the purposes for which it was Leased, or in the event the Lease shall not be terminated by either party within the time above limited, LANDLORD shall promptly, but subject to reasonable delays, restore the Demised Premises to an architectural unit as nearly like its condition prior to such taking as shall be practicable, not including TENANT'S fixtures, furnishings, floor coverings, equipment, stock, or other personality, and this Lease shall continue in full force and effect, except that, effective as of the date of actual taking, the Base Rent shall be diminished by the amount representing the part of said rent applicable to that portion, if any, of the Demised Premises which is so condemned or taken, TENANT'S percentage of Supplemental Rent shall be adjusted.

In the event of termination in any of the cases hereinabove provided, this Lease and the term and estate hereby granted shall expire as of such taking in the same manner and with the same effect as if that were the date hereinbefore set for the expiration of the term of this Lease, and the rent shall be apportioned as of such date.

Condemnation Award - In the event of any condemnation or taking mentioned in this paragraph, whether or not this lease shall be terminated, LANDLORD shall be entitled to receive the entire award in the condemnation proceeding without deduction therefrom for any estate vested by this Lease in TENANT, and TENANT shall receive no part of such award. TENANT hereby expressly assigns to LANDLORD any and all right, title, and interest of TENANT now or hereafter arising in or to any such award or any part thereof.

Although **all damages** in the event of any condemnation are to belong to the LANDLORD whether such damages are awarded as compensation for diminution in value of the leasehold or to the fee of the Demised Premises, TENANT shall have the right to claim and recover from the condemning authority, but not from LANDLORD, such compensation as may be separately awarded or recoverable by TENANT in TENANT'S own right on account of any and all cost or loss to which TENANT might be put in removing TENANT'S merchandise, furniture, fixtures, leasehold improvements and equipment, providing such claim and recovery does not lessen the amount of any monies awarded or awardable to LANDLORD.

11

E. In the event of a condemnation of a leasehold interest in all or a portion of the Demised Premises without the condemnation of the fee simple title also, this Lease shall not terminate and such condemnation shall not excuse TENANT from full performance of all of its covenants hereunder, but TENANT in such event shall be entitled to present or pursue against the condemning authority its claim for, and to receive all compensation or damages sustained by it by reason of, such condemnation, and LANDLORD'S right to recover compensation or damages shall be limited to compensation for, and damages, if any, to, its reversionary interest; it being understood, however, that during such time as TENANT shall be out of possession of the Demised Premises by reason of such condemnation, the Lease shall not be subject to forfeiture for failure to observe and perform those covenants not calling for the payment of money. In the event the condemning authority shall fail to keep the premises in the state of repair required hereunder or to perform any other covenant not calling for the payment of money, TENANT shall have ninety (90) days after the restoration of possession to it within which to carry out its obligations under such covenant or covenants. During such time as TENANT shall be out of possession of the Demised Premises by reason of such leasehold condemnation, TENANT shall pay to LANDLORD, in lieu of the Base Rent provided for hereunder, and in addition to any other payments required of TENANT hereunder an annual rent equal to the average annual Base Rent paid by TENANT for the period from the commencement of the term until the condemning authority shall take possession, or during the preceding three full calendar years, whichever period is shorter. At any time after such condemnation proceedings are commenced, LANDLORD shall have the right, at its option, to require TENANT to assign to LANDLORD all compensation and damages payable by the condemnor to TENANT, to be applied first to the payment of rents and all other sums from time to time payable by TENANT pursuant to the terms of this Lease as such sums fall due and the remainder, if any, to be payable to TENANT at the end of the term hereof or on restoration of possession to TENANT, whichever shall first occur, it being understood and agreed that such assignment shall not relieve TENANT of any of its obligations under this Lease with respect to 'such rents, and other sums except as the same shall be actually received by LANDLORD.

15. ISRA Compliance. TENANT shall, at TENANT'S own expense, comply with the Industrial Site Responsibility Act, N.J.S.A. 13:1K-6 et seq., the regulations promulgated thereunder ("ISRA"), and any and all other environmental or toxic substance law. TENANT shall, at TENANT'S own expense, make all submissions to, provide all information to, and comply with all requirements of, the Bureau of Industrial Site Evaluation of the New Jersey Department of Environmental Protection, or other governmental body ("the Bureau"). Should the Bureau determine that a clean up plan be prepared and that a cleanup be undertaken because of any spills or discharges of hazardous substances or wastes at the premises, then TENANT shall, at TENANT'S own expense, prepare and submit the required plans and financial assurances, and carry out the approved plans. TENANT'S obligations under this paragraph shall arise if there is any closing, terminating or transferring of operations of an industrial establishment at the demised premises or the premises of which the demised premises are a part pursuant to ISRA, or upon the applicability of any # other environmental or toxic substances law. As part of its obligation hereunder, TENANT shall procure an appropriate ISRA Letter of Non-Applicability or Negative Declaration, at TENANT'S expense, upon TENANT'S closure, termination or transfer of operations. At no expense to LANDLORD, TENANT shall promptly provide all information requested by LANDLORD for preparation of non-applicability affidavits and shall promptly sign such affidavits when requested by LANDLORD. TENANT shall indemnify, defend and save harmless LANDLORD from all fines, suits, procedures, claims and actions of any kind arising out of or in any way connected with any spills or discharges of hazardous substances or wastes at the demised premises and from all fines, suits, procedures, claims and actions of any kind arising out of TENANT'S failure to provide all information, make all submissions and take all actions

12

required by the Bureau, including any other division of NJDEP or other governmental body. TENANT'S obligations and liabilities under this paragraph shall continue so long as LANDLORD remains responsible for any spills or discharges of hazardous substances or wastes at the premises which occur during the term of this Lease by reason of. TENANT'S action or default. TENANT'S performance of the terms of this paragraph shall be enforceable by injunction.

TENANT hereby represents that it's Standard Industrial Classification (SIC) number is _____.

16. <u>Security Deposit.</u> Concurrently with TENANT'S execution of this Lease, TENANT has deposited with LANDLORD the sum of <u>$9,000.00</u>. Said sum shall be held by LANDLORD as security for the faithful performance by TENANT of all the terms, covenants and conditions of this Lease to be kept and performed by TENANT during the term hereof. If TENANT defaults with respect to any provision of this Lease, including, but not limited to the provisions relating to the payment of any rent, LANDLORD may (but shall not be required to) use, apply or retain all or any part of this security deposit for the payment of any rent or any other sum in default or for the payment of any amount which LANDLORD may spend or become obligated to spend by reason of TENANT'S default, or to compensate LANDLORD for any other loss or damage which LANDLORD may suffer by reason of TENANT'S default. If any portion of said deposit is so used or applied, TENANT shall, after written demand therefor, deposit cash with LANDLORD in an amount sufficient to restore the security deposit to its original amount, and said sum shall be considered additional rent, due the first of the next following month. LANDLORD shall not be required to keep this security deposit separate from its general funds, and TENANT shall not be entitled to interest on such deposit. If TENANT shall fully and faithfully perform every provision of this Lease to be performed by it, the security deposit or any balance thereof shall be returned to TENANT (or at LANDLORD'S option, to the last assignee of TENANT'S interest hereunder) within ten (10) days following expiration of the lease term. In the event of termination of LANDLORD'S interest in this Lease, LANDLORD shall transfer said deposit to LANDLORD'S successor in interest, whereupon TENANT shall have no further claim against LANDLORD in respect to same.

17. <u>Utilities and Personal Property Taxes.</u>

A. TENANT shall pay for all water, hot water, gas, electric, heat, light, power, Runnemede sewer charges, MUA, telephone service and all other services and utilities supplied to the Demised Premises, together with any taxes thereon. If any such services are not separately metered to TENANT, TENANT shall pay a reasonable proportion to be determined by LANDLORD of all charges jointly metered with other premises.

B. In the event the Demised Premises are connected to public utilities by means of lines passing through the LANDLORD'S property outside the Demised Premises, it shall be the LANDLORD'S responsibility to maintain said lines <u>provided however</u> that LANDLORD'S responsibility shall not extend further than to repair any breaks or obstructions in said lines with reasonable dispatch after being advised of same, and to refrain from any negligent action to cause any such break or obstruction. TENANT'S responsibility in respect to any such lines shall be limited to their entry into the Demised Premises, <u>provided however</u> it shall also extend to any negligent action on the part of the TENANT, TENANT'S agents, invitees and/or licensees causing any such break or obstruction. In no event shall LANDLORD be responsible for any interruption of service of any utility to the Demised Premises occurring by reason of any act or condition outside LANDLORD'S premises, unless actively caused by LANDLORD, and there shall be no abatement of any payments due from TENANT to LANDLORD hereunder by reason of any such interruption. In addition to the foregoing, if this agreement provides that LANDLORD shall itself supply any utility to TENANT, such as water or

sanitary sewer, then LANDLORD'S obligation to continue such service shall be limited to the following: (a) To repair or replace the facility providing such utility service with reasonable dispatch upon being advised of any condition preventing or decreasing the service agreed upon, or (b) To turn over to any public utility, responsibility for providing such service, whereupon LANDLORD shall be free of any further responsibility to provide such utility (as opposed to conducting any such service to or from the Demised Premises, if required). LANDLORD'S actual costs for operating, maintaining and replacing any such facility serving the Demised Premises shall be included in TENANT'S Supplemental Rent under Paragraph 4C hereunder, except that LANDLORD'S costs may be separately apportioned among the tenants other than TENANT who enjoy the benefit of such utility service (if any). If LANDLORD elects to turn over any such service to a public utility, so that TENANT is no longer charged for such service by LANDLORD, TENANT shall pay instead all charges of such public utility without receiving any other credit against any sums due to LANDLORD hereunder.

C. TENANT shall pay, or cause to be paid, before delinquency, any and all taxes levied or assessed and which become payable during the term hereof upon all TENANT'S leasehold improvements, equipment, furniture, fixtures, and any other personal property located in the Demised Premises. In the event any or all of the TENANT'S leasehold improvements, equipment, furniture, fixtures and other personal property shall be assessed and taxed with the real property, TENANT shall pay to LANDLORD its share of such taxes within ten (10) days after delivery to TENANT by LANDLORD of a statement in writing setting forth the amount of such taxes applicable to TENANT'S property.

18. _Holding Over._

A. If TENANT remains in possession of the Demised Premises or any part thereof after the expiration of the term hereof with the express written consent of LANDLORD, such occupancy shall create a tenancy from month to month a rental in the amount of the last monthly Base Rent, plus all other charges payable hereunder, and upon all the terms hereof applicable to a tenancy from month to month.

B. In the event TENANT shall remain in possession of the Demised Premises following the expiration of the term granted hereby and any renewals, without LANDLORD'S written permission, all terms of this Lease shall, as applicable, continue to govern such possession, except that TENANT shall pay to LANDLORD, as damages for such wrongful holdover, for each month or part thereof during which said wrongful holdover continues, double the total of the highest Base Rent and Supplemental Rent due from TENANT to LANDLORD at any time hereunder prior to said holdover.

19. _Continuous Operation._ If the Demised Premises is a retail store or retail service establishment, TENANT shall continuously during the entire term hereof conduct and carry on TENANT'S business in the Demised Premises and shall keep the same open for business and cause TENANT'S business to be conducted therein during the usual business hours of each and every business day as is customary for the other retail businesses in the shopping center in which the Demised Premises are located; provided, however, that this provision shall not apply if the Demised Premises should be closed and the business of TENANT temporarily discontinued therein on account of strikes, lockouts or similar causes, beyond the reasonable control of TENANT. TENANT shall keep the Demised Premises adequately stocked with merchandise, and with sufficient personnel to care for the patronage, and to conduct said business in accordance with sound business practice. In the event of breach by the TENANT of any of the provisions contained in this paragraph, LANDLORD shall have, in addition to any and all remedies herein provided, the right at its option -to collect not only the Base Rent as herein provided, but Additional Rent at the rate of one-thirtieth (1/30) of said Base Rent herein provided, for each, and every day that TENANT shall fail to conduct its business as herein provided.

14

20. <u>Estoppel Certificate.</u> Either party hereto, and/or its successors in interest, shall at any time and from time to time, forthwith upon request from the other party and/or its successors in interest, execute, acknowledge and deliver a statement in writing promptly (a) certifying that this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease as so modified is in full force and effect), and the date to which the rental and other charges are paid in advance, if any, and (b) acknowledging that there are not, to such party's knowledge, any uncured defaults on the part of either party hereunder, or specifying such defaults if any are claimed, and (c) setting forth the date of commencement of rents and expiration of the term hereof. Any such statement may be relied upon by the prospective purchaser or encumbrancer of all or any portion of the real property of which the Demised Premises are a part, or other interested party.

21. <u>Signs.</u> TENANT may affix and maintain only such signs, advertising placards, names, *insignia*, trademarks and descriptive material located, or facing the outside the Demised Premises as shall have first received the written approval of LANDLORD as to type, size, color, location, copy nature and display qualities. Anything to the contrary in this Lease notwithstanding, TENANT shall not affix any sign to the roof. In the event LANDLORD elects to remodel or renovate all or a substantial portion of the Shopping Center, LANDLORD shall be entitled to require TENANT, at TENANT'S expense, to replace any or all of such signs with such substitute signs as are designated by LANDLORD, provided such signs so designated by LANDLORD are consistent with the overall remodeling or renovation plan of LANDLORD.

TENANT shall provide signage at suite entrance and on the street signage at TENANT'S cost.

22. <u>Exterior and Auction Sales.</u>

A.   TENANT may not display or sell merchandise, nor may TENANT allow grocery carts or other similar devices within the control of TENANT to be stored or to remain, outside the defined exterior walls and permanent doorways of the Demised Premises. TENANT further agrees not to install any exterior lighting, amplifiers or similar devices, and not to use in or about the Premises any advertising medium, which may be heard or seen outside the Premises, such as flashing lights, searchlights, loudspeakers, phonographs or radio broadcasts.

B.   TENANT shall not conduct or permit to be conducted any sale by auction in, upon or from the Demised Premises whether said auction be voluntary, involuntary, pursuant to any assignment for the payment of creditors or pursuant to any bankruptcy or other insolvency proceeding.

23. <u>Subordination and Attornment.</u> Upon request of LANDLORD, TENANT will, in writing, subordinate its rights hereunder to the lien of any mortgage or deed of trust, to any bank, insurance company or other lending institution, now or hereafter in force against the Demised Premises, and to all advances made or hereafter to be made upon the security thereof. In the event any proceedings are brought for foreclosure, or in the event of the exercise of the power of sale under any mortgage or deed of trust made by LANDLORD covering the Demised Premises, TENANT shall be deemed to have simultaneously attorned to the purchaser upon any such foreclosure or sale and to have recognized such purchaser as LANDLORD under this Lease.

15

24. <u>Tenants' Association.</u> TENANT further agrees that in the event a majority of the tenants in the Shopping Center shall establish a Tenant's Association for the common promotion of the Shopping Center, it will join, participate and share the costs of such an Association provided, however, that TENANT'S proportionate share of the total cost of the Association shall not exceed a proportion which is equal to the proportion that the square footage of the Demised Premises bears to the total square footage of the buildings of the entire Shopping Center.

25. <u>Brokerage.</u> Each party hereto represents that he has had no contact with any realtor in respect to this Lease or the Demised Premises except whose commission is assumed by Jason Benstead of Berkshire Hathaway Fox & Roach & The Sid Benstead Team and its participating brokerage per separate memorandum. Each party indemnifies the other from any loss, injury or damage, including necessary and reasonable attorneys' fees, resulting from breach of said representation.

26. <u>Quiet Possession.</u> Upon TENANT paying the rent reserved hereunder and observing and performing all of the covenants, conditions and provisions on TENANT'S part to be observed and performed hereunder, TENANT shall have quiet possession of the Demised Premises for the entire term hereof, subject to all the provisions of this Lease.

27. <u>Sale of the Premises.</u> The term "LANDLORD" as used in this Lease means only the owner or landlord for the time being of the land and building of which the Demised Premises form a part, so that in the event of sale or sales of said land and premises the LANDLORD shall be and hereby is entirely freed and relieved of all covenants and obligations of the LANDLORD hereunder and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser at any such sale, that the purchaser has assumed and agreed to carry out any and all obligations of the LANDLORD hereunder.

28. <u>Force Majeure</u>. In the event that either party hereto shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lookouts, labor troubles, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, war or other reason of a like nature not the fault of the party delayed in performing work or doing acts required under the terms of this Lease, the performance of such act shall be excused for the period of such delay. The provisions of this paragraph shall not operate to excuse TENANT from the prompt payment of Base Rent or Supplemental Rent or any other payments required by the terms of this Lease.

29. <u>Default.</u>

A. LANDLORD shall not be in default unless LANDLORD fails to perform obligations required of LANDLORD within a reasonable time, but in no event later than fifteen (15) days after written notice by TENANT to LANDLORD specifying wherein LANDLORD has failed to perform such obligation; provided, however, that if the nature of LANDLORD'S obligation is such that more than fifteen (15) days are required for performance, then LANDLORD shall not be in default if LANDLORD commences performance within such 15-day period and thereafter diligently prosecutes the same to completion. In no event shall TENANT have the right to terminate this Lease as a result of LANDLORD'S default, and TENANT'S remedies shall be limited to damages and/or an injunction. Notwithstanding any provision of this Lease to the contrary, in the event of a breach or default by LANDLORD, its successors or assigns, of any of its obligations hereunder of any kind or nature whatsoever, or of any of the provisions of this Lease,

16

TENANT shall look solely to the equity of LANDLORD, its successors or assigns in the Demised Premises or the Shopping Center of which they are a part for the satisfaction of TENANT'S remedies and no personal judgment shall be sought against LANDLORD, its successors or assigns. It is expressly understood and agreed that the liability of LANDLORD, its successors or assigns under the terms, covenants, conditions, warranties and obligations of this Lease shall in no event exceed the loss of its equity interest in the Demised Premises or the Shopping Center of which they are a part.

B. If (1) TENANT shall default in the payment of any rent or other payments required of TENANT or any part thereof, and if such default shall continue for five (5) days after notice given by the LANDLORD, or (2) if TENANT shall default in the performance or observance of any other agreement or condition on its part to be performed or observed, and if TENANT shall fail to cure said default within ten (10) days after notice of said default from LANDLORD, or (3) if any person shall levy upon, take, or attempt to take this leasehold interest or any part thereof upon execution, attachment, or other process of law, or (4) if TENANT shall make default with respect to any other lease between it and LANDLORD, or (5) if the Demised Premises shall be deserted, vacated, abandoned, or business operations shall not be conducted therein for a period of seven or more days (For the purpose of this paragraph, TENANT shall not be deemed to have permanently ceased operating its business in the premises if TENANT is closed temporarily for remodeling or due to any fire or casualty or if TENANT is closed due to strike, lockout, inability to obtain merchandise or any other cause beyond the reasonable control of TENANT.), or (6) if this Lease or any interest therein shall by operation of law devolve upon or pass to any person or persons other than TENANT, excluding any such passage of TENANT'S interest by reason of the death of TENANT or of TENANT'S principal, or (7) if TENANT shall fail to move into and take possession of the Demised Premises, and open for business within thirty (30) days after substantial completion of the work on Schedule "B", or (8) in the event TENANT is more than seven (7) days late in respect to any three (3) months' rent due hereunder, which three (3) months fall within a consecutive 6-month period, then, in any of said cases (notwithstanding any license of any former breach of agreement or condition or waiver of the benefit hereof or consent in a former instance) TENANT shall have materially breached this Lease.

In the event of such material breach by TENANT, LANDLORD may (a) permit TENANT to remain in possession and sue for all rents, damages and collection costs as due; or (b) terminate this Lease by written declaration, but allow TENANT to remain in possession as TENANT at will and sue TENANT for all rents, damages and collection costs; or (c) LANDLORD may immediately, or at any time thereafter, re-enter and resume possession of the Demised Premises and remove all persons and property therefrom either by summary dispossess proceedings or by a suitable action or proceeding at law or in equity, or by force or otherwise, without being liable for any damages therefor. (No reentry by the LANDLORD shall be deemed an acceptance of a surrender of this Lease unless accompanied by a declaration by LANDLORD to that effect); or (d) upon re-taking possession, keep the premises vacant (subject to reasonable efforts at mitigation of LANDLORD'S damages) and sue TENANT for all rents, damages and collection costs; or (e) upon re-taking possession LANDLORD may, as TENANT'S agent and without effecting TENANT'S liability hereunder, relet the whole or any part of the Demised Premises for a period equal to, or greater, or less than the remainder of the then term of this Lease, at such rental and upon such terms and concessions as LANDLORD shall deem reasonable, to any lessee or lessees which it may deem suitable and satisfactory for any use and purpose which it may deem appropriate. In no event shall the LANDLORD be liable in any respect for failure to relet the Demised Premises or in the event of such reletting, for failure to collect the rent thereunder. Any sums received by the LANDLORD on a reletting in excess of the rent reserved in this Lease shall belong to LANDLORD; (f) Without liability to TENANT or any other party and without constituting a constructive or actual eviction, LANDLORD may suspend or discontinue furnishing or rendering to TENANT any property, material, labor, utilities or other

service, wherever LANDLORD is obligated to furnish or render the same, so long as TENANT is in default under this Lease; (g) LANDLORD may foreclose the security interest described in Paragraph 6 hereof, including the immediate taking of possession of all property on or in the Premises.

If TENANT shall default in the performance of any covenant or condition in this Lease required to be performed by TENANT (other than the payment of money to LANDLORD), LANDLORD may, after five (5) days' notice to TENANT, or without notice, if, in LANDLORD'S opinion, an emergency exists, perform such covenant or condition for the account and at the expense of TENANT. If LANDLORD shall incur any expense, including reasonable attorneys' fees, in instituting, prosecuting or defending any action or proceeding instituted by reason of any default of TENANT, TENANT shall reimburse LANDLORD for the amount of such expense. Should TENANT, pursuant to this Lease, become obligated to reimburse or otherwise pay LANDLORD any sum of money in addition to the specific rent, the amount thereof shall be deemed additional rent and may, at the option of LANDLORD, be added to any subsequent installment of the specific rent due and payable under this Lease, in which event, LANDLORD shall have the remedies for default in the payment thereof provided by this Lease. The provisions of this paragraph shall survive the termination of this Lease.

The parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of LANDLORD and TENANT, TENANT'S use or occupancy of the Demised Premises, and/or any claim of injury or damage. In the event LANDLORD commences any proceedings for nonpayment of Base Rent, Supplemental Rent or Additional Rent, TENANT will not interpose any counterclaim of whatever nature or description in any such proceedings. This shall not, however, be construed as a waiver of the TENANT'S right to assert such claims in any separate action or actions brought by TENANT.

**30. Attorney's Fees.**     In the event of any action or proceeding brought by either party against the other under this Lease, the prevailing party shall be entitled to recover for the fees of its attorneys in such action or proceeding, including costs of appeal, if any, in such amount as the court may adjudge reasonable as attorneys' fees. In addition, should it be necessary for either party to employ legal counsel to enforce any of the provisions herein contained, the other party aggress to pay all attorneys' fees so reasonably incurred.

**31. Notices.** All notices and demands which may or are to be required or permitted to be given by either party on the other hereunder shall be in writing and shall either be personally delivered or shall be sent by United States Certified Mail, Return Receipt Requested, postage prepaid, to the address set forth at the beginning of this Lease or to such other person or place as the LANDLORD or TENANT may from time to time designate in a notice sent to said address in accordance with this paragraph.

**32. Miscellaneous.**

A. If there is more than one Tenant the obligations hereunder imposed shall be joint and several.

B. The covenants and conditions herein contained, subject to the provisions as to *assignment*, apply to and bind the heirs, successors, executors, administrators and assigns of the parties hereto.

C. This Lease *contains* all of the agreements of the parties hereto with respect to any matter covered or mentioned in this Lease, and no prior agreements or understanding pertaining to any such matters shall be effective for any purpose. LANDLORD has made no representations as to the quality of the Demised Premises, nor as

18

to the shopping center within which same is located, nor as to any personal property within or appurtenant to the Demised Premises, whether or not made available to TENANT.

D. No provision of this Lease may be amended or added to except by an agreement in writing signed by the parties hereto or their respective successors in interest. This Lease shall not be effective or binding on any party until fully executed by both parties hereto.

E. The waiver by LANDLORD or TENANT of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of rent hereunder by LANDLORD or payment by TENANT shall not be deemed to be a waiver of any preceding default by TENANT or LANDLORD respecting condition of this Lease, other than the failure of TENANT to pay the particular rental so accepted, regardless of knowledge of such preceding default at the time of the acceptance or payment of such rent.

F. All pronouns herein shall be read to be masculine, feminine, neuter, singular or plural as the context requires.

G. Unless' specifically set forth within this Lease or by rider annexed, TENANT is granted no exclusive right to its operation within the shopping center. If any such exclusive is specified herein, the sole remedy of the TENANT shall be to enjoin such use by a subsequent occupant of the shopping center. To preserve such remedy, TENANT is cautioned to record a memorandum of this Lease, including such restriction, in the appropriate land record office.

33. <u>Memorandum</u>

The parties agree that at the request of either party they shall join in the execution of a memorandum of this Lease in recordable form containing the most significant terms hereof, including also the date of commencement if other that as set forth herein.

If TENANT is a corporation, each individual executing this Lease on behalf of said corporation individually represents and warrants that he is duly authorized to execute and deliver this Lease on behalf of said corporation, in accordance with the bylaws of said corporation, and that this Lease is binding upon said corporation.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above set forth.

LANDLORD:
SINTARA CORP

*Please Review and Sign Exhibit E Thank you MP*

WITNESS OR ATTEST                    TENANT: Name Your Sport LLC

Name: _____ Date: _____

19

LANDLORD:  SINTARA CORP
TENANT:    Name Your Sport LLC

DATED:     11/15/2018

| Paragraph Number | Heading | Page Number |
|---|---|---|
| 1 | Demised Premises | 1 |
| 2 | Term | 1 |
| 3 | Base Rent | 1 |
| 4 | Supplemental Rent | 2 |
| 5 | Rent Payment Without Deduction or Delay | 3 |
| 6 | Landlord's Lien | 4 |
| 7 | Use | 5 |
| 8 | Assignment | 5 |
| 9 | Tenant's Work . | 6 |
| 10 | Landlord's work | 7 |
| 11 | Liability and Insurance Therefor | 8 |
| 12 | Access by Landlord | 9 |
| 13 | Fire Loss | 9 |
| 14 | Condemnation | 10 |
| 15 | ISRA Compliance | 12 |
| 16 | Security Deposit | 12 |
| 17 | Utilities and Personal Property Taxes | 13 |
| 18 | Holding Over | 14 |
| 19 | Continuous Operation | 14 |
| 20 | Estoppel Certificate | 14 |
| 21 | Signs | 15 |
| 22 | Exterior and Auction Sales | 15 |
| 23 | Subordination and Attornment | 15 |
| 24 | Tenants' Association | 15 |
| 25 | Brokerage | 15 |
| 26 | Quiet Possession | 16 |
| 27 | Sale of the Premises | 16 |
| 28 | Force Majeure | 16 |
| 29 | Default | 16 |
| 30 | Attorney's Fees | 18 |
| 31 | Notices | 18 |
| 32 | Miscellaneous | 18 |
| 33 | Memorandum | 19 |
| Exhibit A | Option to Renew | |
| Exhibit B | Schedule of LANDLORD'S work | |
| Exhibit C | Schedule of TENANT'S work | |
| Exhibit D | Guarantee | |

## EXHIBIT A

### Option to Renew

Provided that TENANT is not the in default in the performance of any of its obligations hereunder, it shall have the option to extend the term o this Lease for:

**EXHIBIT B**

Schedule of LANDLORD'S Work

TENANT agrees to take Demised Premises in "as is" condition with the
following work to be done by the LANDLORD at LANDLORD'S cost:

**EXHIBIT C**

Schedule of TENANT'S Work

TENANT agrees to take Demised Premises in "as is" condition.
Tenant shall obtain the final CO at its own cost.

**EXHIBIT D**

GUARANTY

The undersigned, in consideration of and as an inducement to
Sintara Corp., as LANDLORD, in entering into a Lease dated November
15, 2018    with *NAME YOUR SPORT LLC* as    TENANT,    the    undersigned
("Guarantors"), hereby jointly and severally unconditionally guarantee
unto Landlord, and its successors and assigns the prompt payment of
all Fixed Rent, additional rent and other charges and the performance
of all of the terms, covenants and conditions provided in such Lease
to be paid or performed by the Tenant or its successors or assigns.
Guarantors jointly and severally consent to any extensions of time or
changes in the manner of payment or performance by the Tenant, or its
successors or assigns, Landlord may grant the Tenant, or its
successors or assigns, and further jointly and severally consent to
the assignment and the successive assignments of the Lease by
Landlord, and any modifications thereof, including the subletting of
the leased premises, all without notice to guarantors. Guarantors
jointly and severally agree to pay the Landlord, or its successors or
assigns, all expense incurred in enforcing the obligations of the
Tenant, or its successors or assigns, under the Lease and in enforcing
this Guaranty. Guarantors waive notice of acceptance of this Guaranty.

IN WITNESS WHEREOF, Guarantors have duly executed this
Guaranty this day of _11/15/18_

WITNESS :

Name: *NAME YOUR SPORT LLC by Nicholas Palato Managing Member*

Address: *Current*
*300 E Front St*
*Glendora NJ 08029*

Exhibit A 11/15/18

Hi Karen

We have reviewed the lease and I have a few minor questions. Can you have the landlord sign under each question agreeing and accepting.

1. Can I get the fit out in writing that I am allowed to do the remodel of the former gym by removing the rooms and walls on the right side of the unit? I also would be removing the old platforms on the left side and in the rear room. I will have proper permitting from the borough of Runnemede

2. What should I do with the stuff that was left behind from the former tenant? The stuff that can't be used will be discarded or put into the vacant unit next door. Tenant may

3. Can you change the use from sports club to sports training facility?

4. Can the landlord approve the hours of our operation? Our hours will probably be M-F 3pm-10pm Sat and Sun 9am-11pm

5. Can the landlord verify separate gas and electric meters for this unit or are they combined with the other units? If so, what is the monthly cost for electric and gas? I was advised that there is separate meters for this unit.

6. I would like this lease to be contingent upon the approval of use from the Twp. of Runnemede. I don't foresee any issues with the Twp. but if they deny a sports training club at this location, then the contract would be void and my deposit returned to me.

Please advise and let me know if anyone has any questions or concerns.

Thank you   Name Your Sport, LLC

Mike Palobo/ Managing Member

11/15/18

# EXHIBIT H

# EXHIBIT H

EXHIBIT __H__ - **Cash on hand on the Effective Date**

Cash on hand on the Effective Date:                          $   **78,945.91**

Less -

      Amount of Administrative Expenses payable on effective          $   **TBD upon agreement**
      date of Plan                                                             **with Sub V Trustee**

      Amount of statutory costs and charges                          $   **0.00**

      Amount of cure payments for executory contracts                $   **38,357.91**

      Other Plan Payments due on Effective Date                      $   **1,000.00 monthly**
                                                                           **payment & $1,500.00**
                                                                           **collection of**
                                                                           **pre-petition A/R**

                          Balance after paying these amounts……..  $   **38,088.00**

The sources of the cash the Debtor will have on hand by the Effective Date are estimated as follows:

    $   **7,146.00**     Cash in the Debtor's bank account now

    +   **33,442.00**    Additional cash Debtor will accumulate from net earnings between now and Effective Date based upon
                       Financial Forecast (Exhibit C)

    +   **38,357.91**    Capital Contributions

    $   **78,945.91**    Total

# EXHIBIT I

# EXHIBIT I

EXHIBIT  _I_  - **Liquidation Analysis**

Pursuant to Section 1190(1)(B) of the Bankruptcy Code

### *Debtor's Estimated Liquidation Value of Assets*

**Assets**

| | | |
|---|---|---|
| a. Cash on hand | $ | **7,146.50** |
| b. Accounts receivable | $ | **23,771 ($19,500 collectible)** |
| c. Inventory | $ | |
| d. Office furniture & equipment | $ | |
| e. Machinery & equipment | $ | **33,100** |
| f. Automobiles | $ | |
| g. Building & Land | $ | |
| h. Customer list | $ | |
| i. Investment property (such as stocks, bonds or other financial assets) | $ | |
| j. Lawsuits or other claims against third-parties | $ | |
| k. Other intangibles (such as avoiding powers actions) | $ | |
| *Total Assets at Liquidation Value* | $ | **59,746.50** |

**Less:**

| | | |
|---|---|---|
| Secured creditors' recoveries | $ | |

**Less:**

| | | |
|---|---|---|
| Chapter 7 trustee fees and expenses | $ | **17,880** |

**Less:**

| | | |
|---|---|---|
| Chapter 11 Administrative Expenses | $ | **12,400** |

**Less:**

| | | |
|---|---|---|
| Priority claims, excluding Administrative Expense claims | $ | |
| (1) Balance for unsecured claims | $ | **29,466.50** |
| (2) Total dollar amount of unsecured claims | $ | **49,536** |

| | | |
|---|---|---|
| *Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:* | **60** | % |

| | | |
|---|---|---|
| *Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:* | **100** | % |

*new.2/19/2020*